*In re* TY STYK HARRISON, a Minor (The People of the State of Illinois, Petitioner-Appellant, *v.* Beverly Harrison, Respondent-Appellee).—*In re* A. B. HARRISON, a/k/a Billy Harrison, a Minor (The People of the State of Illinois, Petitioner-Appellant, *v.* Beverly Harrison, Respondent-Appellee).

Fourth District   Nos. 4—83—0692, 4—83—0693 cons.

Opinion filed December 15, 1983.

James R. Benson, State's Attorney, of Paxton (Robert J. Biderman and

Perry Lee Miller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Paul R. Wilson, Jr., of Rantoul, for appellee.

Sue A. Gibson, of Dilks, Rodeen & Gibson, of Paxton, guardian *ad litem.*

JUSTICE WEBBER delivered the opinion of the court:

This appeal presents a novel question which has not been entirely answered in this State so far as we know: does a natural parent have the right to counsel on appeal when his parental rights have been adjudicated in a case involving their termination?

Both minors had been adjudicated neglected and dependent, Billy by the circuit court of Iroquois County, and Ty Styk by the circuit court of Ford County. In each case the Guardianship Administrator of the Department of Children and Family Services of the State of Illinois was appointed guardian of the minors with power to place them in foster care. Ultimately Billy's case was transferred to Ford County and the State's Attorney there filed petitions in each case seeking to terminate parental rights and to empower the Guardianship Administrator to consent to adoption. The cases were consolidated for hearing, and the trial court appointed Mr. Paul R. Wilson, Jr., as counsel for the mother, Beverly Harrison. The natural fathers of the minors did not appear at any stage of any of the proceedings and were defaulted.

The trial court held an extensive evidentiary hearing on the petitions and denied the prayers thereof. The State then appealed. Mr. Wilson filed a motion in the trial court seeking to be appointed counsel on appeal. That motion was denied there. He then filed a similar motion in this court.

Because of the gravity and novelty of the question, we took the motion with the case and ordered the parties to brief it, to argue the motion first, and in the event of its allowance, to be prepared to go forward immediately with argument on the merits. This was done; we now allow the motion and appoint Mr. Wilson as counsel for Beverly Harrison on appeal; and we affirm the order of the trial court.

Respondent has argued that she is entitled to counsel on appeal under both the Constitution of the United States and the Constitution of Illinois of 1970 as a matter of due process and equal protection. She also argues statutory grounds.

A Federal case, extensively cited by both parties (*Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 68 L. Ed. 2d 640,

101 S. Ct. 2153), dealt with the question of counsel on the trial level. In that case the minor had been adjudicated neglected and custody was awarded to the Department of Social Services. The mother was afterwards convicted of a homicide and sentenced to a term of 25 to 40 years' imprisonment. The Department then petitioned to terminate parental rights. The mother was served but took no action in connection with the case, although she had retained counsel to overturn her criminal conviction. The trial court refused to appoint counsel for her in the termination proceeding, finding that there was no averment that she was indigent, that she had had ample time to secure a lawyer, and that her failure to do so was without just cause.

The Supreme Court held that due process did not require the appointment of trial counsel in every instance. It noted that the petition to terminate contained no allegation of neglect or abuse upon which criminal charges might be based. No expert witnesses were called to testify, and the case was relatively uncomplicated. The evidence strongly favored the termination and the presence of counsel could not have made a determinative difference. Under these circumstances the court held that it was not error to refuse to appoint counsel.

However, the court did not entirely foreclose the possibility of appointment of counsel on due process grounds, but rather left the matter to be determined by the States on a case-by-case basis.

■ Respondent argues, and we agree, that the instant case is factually inapposite to *Lassiter*. Respondent presented a vigorous defense and prevailed in the trial court. She then further argues that by virtue of the State appeal, she has as much at stake in this court as she did in the trial court, and therefore due process requires the appointment of counsel. The argument is attractive, but since *Lassiter* was concerned only with trial counsel, we feel it would be presumptuous of us to expand its scope to appeal counsel, especially since such an amorphous concept as due process is involved.

A number of our sister States have considered the matter and have held on due process and equal protection grounds that there is a constitutional right to counsel and a record for appeal in a termination of parental rights case. See, *e.g., State ex rel. Heller v. Miller* (1980), 61 Ohio St. 2d 6, 399 N.E.2d 66; *Reist v. Bay County Circuit Judge* (1976), 396 Mich. 326, 241 N.W.2d 55; *In re Brehm* (1979), 3 Kan. App. 2d 325, 594 P.2d 269.

The State, in this appeal, relies on two of our supreme court's decisions. However, they too, like *Lassiter*, deal with the question of counsel at the trial level.

*In re Adoption of Hoffman* (1975), 61 Ill. 2d 569, 338 N.E.2d 862,

was concerned with the presence of counsel at the time of execution of adoption consents. The supreme court held that there was no constitutional right to counsel at that stage, especially since the statute required that the consent be executed before a judge.

*People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748, was a *per curiam* supervisory order dealing with a conflict of counsel at the trial level. In that case the court did say, "Unlike most criminal cases, there is no constitutional right to counsel in this case." (79 Ill. 2d 466, 468, 405 N.E.2d 748, 749.) *Hoffman* was cited as authority for this proposition. However, in the next sentence the *Lackey* court went on to say, "There is, however, express provision for the appointment of 'the Public Defender or such other counsel as the case may require' when requested by an indigent party. (Ill. Rev. Stat. 1977, ch. 37, par. 701–20(1).)" 79 Ill. 2d 466, 468, 405 N.E.2d 748, 749.

The underlying rationale of both *Hoffman* and *Lackey*, in our opinion, is that the presence of a statutory provision (*i.e.*, the presence of a judge in *Hoffman*, and the requirement of counsel in *Lackey*) obviated the necessity of addressing the constitutional issue. This is altogether in keeping with the doctrine (more honored in the breach than in the observance in recent times) that if a court may dispose of a case on some other ground, the constitutional issue will be avoided.

A leading case on the subject is *City of Detroit v. Gould* (1957), 12 Ill. 2d 297, 146 N.E.2d 61. In that case the city of Detroit, Michigan, sued in the circuit court of Cook County, Illinois, for personal property taxes owed by the defendant. The defense was that no judgment had been obtained for them in Michigan upon which the full faith and credit clause of the Federal Constitution might operate. The supreme court rejected the theory and allowed the suit on the basis of comity, and said:

> "This cause comes to this court upon a constitutional question: Must the courts of Illinois give full faith and credit to the taxing statutes of the State of Michigan? Having determined that upon principles of comity, the Illinois court should hear the plaintiffs' action, it becomes unnecessary for us to determine if the constitutional provision also requires the circuit court of Cook County to hear the cause. A constitutional question should not be decided if the cause can be determined on other grounds. *People ex rel. Downs v. Scully*, 408 Ill. 556; *Winston v. Zoning Board of Appeals*, 407 Ill. 588; *People v. Metcoff*, 392 Ill. 418; *People v. Chiafreddo*, 381 Ill. 214." 12 Ill. 2d 297, 304, 146 N.E.2d 61, 65.

The reason for the rule is apparent. A common law constitutional decision, as distinguished from a decision on the constitutionality of a statute, becomes a not-so-subtle piece of judicial legislation and may be altered or repealed only by either a constitutional amendment or by an overruling by the court itself. The wisdom of the decision may not stand the test of time, or as the French say, "*Autre temps, autres mores.*" The law, being a constantly emerging creature, must remain flexible and alive. A common law constitutional decision leads to embalming it and endless efforts to distinguish, if it no longer suits changing conditions.

We therefore decline to follow the constitutional approach, but we find a statutory basis for the appointment of counsel on appeal.

■ ■ Section 1—20(1) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(1)) provides in pertinent part: "At the request of any party financially unable to employ counsel, the court shall appoint the Public Defender or such other counsel as the case may require." Section 1—20(3) of the same Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(3)) provides in pertinent part: "Upon an adjudication of wardship of the court under Section 4—8, the court shall inform the parties of their right to appeal therefrom *as well as from any other final judgment of the court.*" (Emphasis added.) Unquestionably an order concerning the termination of parental rights is a final order and thus appealable. We can discern no logical nor rational reason why the legislature would provide for an admonishment concerning appeal but in the same breath deny counsel on appeal when counsel has been mandated at trial. Nor do we discern any qualitative difference between who may be appellant and who appellee in such a case. The statute superficially appears to be aimed at the parents as appellants, but again it would be illogical and irrational to allow counsel for the parents as appellants but deny it as appellees.

This statutory approach has been followed in some of our sister States. The Supreme Court of Iowa stated the matter in a succinct fashion:

> "The conclusion is inescapable that the legislature intended to afford all persons coming before the juvenile court a full and complete review on appeal. This is particularly true in view of section 232.1, which provides that the chapter shall be liberally construed so that each child coming within the jurisdiction of the court will receive care and guidance that will conduce to his welfare and the best interests of the state. It must be assumed that this right of appeal, particularly in view of section 232.1, was not intended to be limited to those cases in which the mi-

nor child or his parents were financially able to afford such appeal. Certainly the legislature intended that the indigent child or the indigent parent should receive an appeal equal to that of the affluent one.

* * *

We see no reason why the appointment of counsel for plaintiff under section 232.28 should be construed to terminate when the hearing before the juvenile court was concluded. That section does not so provide; and when plaintiff was given the statutory right to appeal, it must have been contemplated that such an appeal would require the services of counsel. We hold therefore that the appointment of counsel to represent plaintiff should continue through all stages of the proceedings including an appeal as authorized by statute." *In re Chambers* (1967), 261 Iowa 31, 34-35, 152 N.W.2d 818, 821.

The California Courts of Appeal have arrived at the same conclusion under their statute. See *In re Simeth* (1974), 40 Cal. App. 3d 982, 115 Cal. Rptr. 617; *In re Norma M.* (1975), 53 Cal. App. 3d 344, 125 Cal. Rptr. 721.

■ Overarching all is the gravity of a termination of parental rights case. So far as the natural parents are concerned, the termination of parental rights is the equivalent of the death of the child. Even a convicted felon, absent any question of life imprisonment or a death sentence, may ultimately be restored to his family. It is totally inconsistent with the purpose and policy of the Juvenile Court Act stated in section 1—2 thereof (Ill. Rev. Stat. 1981, ch. 37, par. 701—2) to deny the natural parents who are indigent the right to counsel on appeal.

As to the merits of the trial court's order, it would unduly lengthen this opinion to recite in detail all of the facts elicited at the hearing. The State maintains that the order is against the manifest weight of the evidence. No other issue is presented for our scrutiny.

■ The rules of law in this area are well known. Evidence of unfitness must be proved by clear and convincing evidence. (*In re Grotti* (1980), 86 Ill. App. 3d 522, 408 N.E.2d 728.) The findings of the trial court are entitled to great deference by the reviewing court. (*In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.) A reversal must be based on a finding that the trial court's determinations were against the manifest weight of the evidence. *In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568.

■ We have examined the record with care and have concluded that the State failed in its burden of proof. The respondent is far

from an ideal mother. As counsel stated in oral argument, she would never win the Mother-of-the-Year award. However, this does not *per se* make her unfit. The record discloses that much of her difficulty was an inability to communicate with the Department of Children and Family Services (DCFS), a complaint not unusual in these cases. She indicated confusion as to why her children had been removed from her home and seemed uncertain as to what DCFS expected her to accomplish before she could regain custody. It is significant that the respondent was the only one to testify at the hearing. No one from DCFS offered any evidence to rebut respondent's claims.

The trial court found respondent to be a passive person and that this trait accounted for her failure better to carry out her parental responsibilities. Her shortcomings are many, but even cumulatively they do not establish unfitness by clear and convincing evidence. A trial court's finding of unfitness will not be reversed on appeal unless it is against the manifest weight of the evidence. (*In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84.) A finding of fitness, by extension of logic, is entitled to the same deference.

The motion to appoint counsel on appeal is allowed and the order of the circuit court of Ford County is affirmed.

Affirmed.

MILLS, P.J., and GREEN, J., concur.