[No. S040932. Dec. 26, 1995.]

In re BRYCE C., a Minor.
VERNON S., Petitioner and Appellant, v.
JEROME C., Objector and Respondent.

## COUNSEL

H. Dennis Beaver and Ronald P. Kaplan for Petitioner and Appellant.

Bradley A. Bristow, under appointment by the Supreme Court, for Objector and Respondent.

No appearance for Minor.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Mary A. Roth, Deputy Attorney General, and Carol Ann White as Amici Curiae, upon the request of the Supreme Court.

## OPINION

**ARABIAN, J.**—Family Code section 7895 provides that, upon request, an appellate court "shall" appoint counsel for an indigent "appellant" appealing "a judgment freeing a child who is a dependent child of the juvenile court from parental custody and control." The question here is whether an appellate court is required to appoint counsel for a *respondent* when the trial court

*refused* to free the child from parental custody and control and the child was not a juvenile court dependent.

We conclude that Family Code section 7895 requires appellate courts to appoint counsel only for parents appealing a judgment freeing a child from their custody and control. Thus, respondent father in this case was not entitled, as of right, to appointed counsel. We also conclude, however, that appellate courts have discretion to appoint counsel for a parent in any other appeal in which the parent's custody and control of a child is at stake, and should exercise that discretion whenever the appearance of counsel may reasonably affect whether parental rights are terminated. Because the Court of Appeal here did not exercise that discretion, we remand the matter for that purpose.

## I. Procedural History

The stepfather of a minor petitioned the superior court to declare the child free from the father's custody and control, and alleged that the father had abandoned the child. After taking evidence, the court found no abandonment, and denied the petition. The stepfather appealed. Represented by retained counsel, he filed an opening brief arguing that the finding of no abandonment was not supported by substantial evidence, and the court erred by failing to consider the best interests of the child.

The respondent father asked the Court of Appeal to appoint counsel for him. The court denied the request, finding that "respondent is not entitled to appointment of appellate counsel under Family Code section 7895 (former Civ. Code, § 237.7) in that the child was not declared free from parental custody and control, and the child was not a dependent child of the juvenile court." We granted the father's petition to review this order, and appointed counsel to represent him in this court.

The stepfather has declined to brief the question in this court, but we requested and received a letter brief from the Attorney General, who argues that appointment of counsel in a case such as this is discretionary.

## II. Discussion

### A. *Background*

Family Code section 7800 et seq. establishes a proceeding "for the purpose of having a minor child declared free from the custody and control

of either or both parents." (Fam. Code, § 7802.)[1] These proceedings are immensely important to the parent because a "declaration of freedom from parental custody and control pursuant to this part terminates all parental rights and responsibilities with regard to the child." (Fam. Code, § 7803.)

In *In re Jacqueline H.* (1978) 21 Cal.3d 170, 175, 177 [145 Cal.Rptr. 548, 577 P.2d 683] (*Jacqueline H.*) we interpreted a predecessor statutory scheme that did not expressly "provide for the appointment of [appellate] counsel" for indigent parents, and concluded "that the Legislature could not have intended to withhold from an indigent parent the right to an *effective* appeal, and, therefore, the services of appellate counsel in [former Civil Code] section 232 proceedings." (Italics in original.) Accordingly, we construed the statutes as impliedly requiring a "reviewing court to appoint counsel for any indigent parent appealing from an order terminating parental rights . . . ." (*Ibid.*)

A few years after *Jacqueline H., supra,* 21 Cal.3d 170, the Legislature enacted former Civil Code section 237.7 to expressly provide for appellate counsel. (Stats. 1984, ch. 605, § 1, p. 2326.) The substance of that provision is now found in Family Code section 7895 (section 7895), which provides as pertinent:

"(a)   Upon appeal from a judgment freeing a child who is a dependent child of the juvenile court from parental custody and control, the appellate court shall appoint counsel for the appellant as provided by this section.

"(b)   Upon motion by the appellant and a finding that the appellant is unable to afford counsel, the appellate court shall appoint counsel for the indigent appellant, and appellant's counsel shall be provided a free copy of the reporter's and clerk's transcript. . . ."

On its face, this statute appears to contain two prerequisites to the parent's right to appointed appellate counsel: (1) the parent must be the "appellant" from a judgment "freeing a child . . . from parental custody and control"; and (2) the child must be a "dependent child of the juvenile court." Neither is met here: father is the respondent after the court refused to declare the child free from his custody and control, and the child was not a juvenile court dependent. The Court of Appeal relied on both of these circumstances to deny father appointed counsel.

---

[1]Effective January 1, 1994, the Legislature created the new Family Code, largely consisting of statutory provisions transferred from other codes. (See *Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1049, fn. 1 [43 Cal.Rptr.2d 445, 898 P.2d 891].) The sections of the Family Code discussed here were previously in the Civil Code. (See *In re Curtis S.* (1994) 25 Cal.App.4th 687, 690, fn. 1 [30 Cal.Rptr.2d 739].) Generally, we will cite only to the current Family Code sections unless there is a need to cite the predecessor statute.

Two recent Court of Appeal decisions construing this statute have reached conflicting conclusions. In both cases, the parent was the appellant but the child was not a juvenile court dependent. The first decision interpreted the statute strictly, and found no right to counsel. (*In re Curtis S., supra,* 25 Cal.App.4th 687.) The second found there was a right to counsel. (*Appellate Defenders, Inc.* v. *Cheri S.* (1995) 35 Cal.App.4th 1819 [42 Cal.Rptr.2d 195] (*Appellate Defenders*).) Neither confronted the question whether counsel must be appointed for a respondent parent whose rights were not terminated. As this latter question is dispositive here, we turn to it.

### B. *Parent as Respondent*

■ The father argues that he is entitled to counsel under section 7895 even though he is a respondent and the trial court refused to declare the child free from his custody and control. We disagree. The statute specifically refers to a "judgment freeing a child . . . from parental custody and control," and uses the word "appellant" to describe the person entitled to counsel no fewer than four times. Generally, the expression of some things in a statute implies the exclusion of others not expressed. (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Here, the statute impliedly excludes the right to counsel to a respondent.

The court in *Appellate Defenders, supra,* 35 Cal.App.4th 1819, examined the legislative history of former Civil Code section 237.7 and found "no intent by the Legislature to abrogate or restrict the right to appellate counsel established by *Jacqueline H.* Rather, the Senate and Assembly Committees on the Judiciary analyzed the legislation as codifying *Jacqueline H.,* requiring reviewing courts to appoint counsel for *any* indigent parent whose parental rights were terminated. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1912 (1983-1984 Reg. Sess.) as amended Mar. 19, 1984, at pp. 1-2 (Assembly Analysis); Legislative Analyst, Analysis of Sen. Bill No. 1912 (1983-1984 Reg. Sess.) as amended June 14, 1984, at p. 2 (Senate Analysis).)

"The stated need for codification was that ' "confusion and delays" result when rights are extended by the courts rather than by statute.' (Sen. Analysis, *supra,* at p. 3.) Moreover, the Assembly analysis explained support for the legislation as follows: '[T]he fundamental nature of parental rights mandates protection by the state of familial rights throughout all phases of termination proceedings. Such protection is critical *where indigency might preclude any appeal, or any effective appeal, by an impoverished parent . . . .*' (Assem. Analysis, *supra,* at p. 3.)" (*Appellate Defenders, supra,* 35 Cal.App.4th at pp. 1824-1825, first italics in original, second italics added.)

The court found "no situation where an indigent person is entitled to appointed trial counsel and denied counsel on appeal from an adverse judgment. . . . If skilled counsel is needed to protect the indigent parent's rights at trial and preserve issues for appeal, it follows skilled appellate counsel should examine that record for claims of error." (*Appellate Defenders, supra*, 35 Cal.App.4th at p. 1826.)

Father has asked us to judicially notice legislative materials concerning the bill that led to the enactment of what is today section 7895, including those considered in *Appellate Defenders, supra*, 35 Cal.App.4th 1819. We grant the motion. (Evid. Code, §§ 452, subds. (c) & (h), 459, subd. (a); *Ford & Vlahos* v. *ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1226 [36 Cal.Rptr.2d 464, 885 P.2d 877].) As the court in *Appellate Defenders, supra*, 35 Cal.App.4th 1819, found, the materials, including analyses of both the Senate and Assembly Committees on the Judiciary, show an intent to codify the rule of *Jacqueline H., supra*, 21 Cal.3d 170. They do not, however, evidence an intent to expand that rule.

The legislative language and history both demonstrate an intent to require counsel for appellants, but not necessarily for respondents. Substantial reasons explain and justify a statute granting counsel to all appellants whose parental rights have been terminated but not to all respondents whose rights have *not* been terminated. An appellant whose rights have been terminated has the burden to perfect the appeal, and to identify and argue points of error to try to overturn a presumptively valid judgment. (See, e.g., *In re Brittany H.* (1988) 198 Cal.App.3d 533, 549 [243 Cal.Rptr. 763] [stressing the presumptions in favor of factual findings by the trial court].) The rationale of *Jacqueline H., supra*, 21 Cal.3d at page 177, was that indigent parents should have the "right to an *effective* appeal," not just any appeal, which requires an attorney. (Italics in original.) The quoted language was also quoted in the bill analyses of both the Senate and Assembly Committees on the Judiciary. Although counsel is certainly useful, and sometimes vital, to a respondent, this argument has less force when the parent is defending a favorable judgment, and the presumptions favor the respondent.

The differing positions of appellant and respondent are illustrated in the Rules of Court. If an *appellant* fails to file a brief, the appeal may be dismissed entirely. (Cal. Rules of Court, rule 17(a).) By contrast, if the respondent fails to file a brief, the judgment is not automatically reversed. Rather, the reviewing court "may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief." (Cal. Rules of Court, rule 17(b).) Although some courts have

treated the failure to file a respondent's brief as in effect a consent to a reversal, it has been said that the "better rule . . . is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found." (*Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335]; accord, *Carboni* v. *Arrospide* (1991) 2 Cal.App.4th 76, 80, fn. 2 [2 Cal.Rptr.2d 845].) Certainly, if the respondent in an appeal from a judgment refusing to terminate parental rights is unrepresented, the appellate court should reverse only if prejudicial error is found. Because of the general presumptions favoring the judgment, many can and should be affirmed even absent a brief or other appearance by the respondent. (We, of course, express no opinion regarding the merits of this appeal.) In those cases, at least, counsel might be unnecessary.

For these reasons, we conclude that when the Legislature decreed that counsel must be appointed for appellants from a judgment freeing the child from parental custody and control, it impliedly withheld the absolute right to counsel to respondents whose rights have not been terminated.

Because father, as a respondent, is not entitled to counsel as of right, and because, as discussed below, appellate courts have *discretion* to appoint counsel in any appeal in which parental rights are at stake, we need not decide the additional question whether the child must be a dependent child of the court for counsel to be required. That issue can await a case, should one arise, in which the appellate court refuses, in its discretion, to appoint counsel for an *appellant* parent.

## C.  *Discretion to Appoint Counsel*

■     The fact that the Legislature has not *required* appointment of counsel for indigent respondents in termination cases does not mean that appellate courts do not have *discretion* to appoint counsel. As the Attorney General argues, they do have discretion.

It is "plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' [Citation.] . . . . A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 649-650, 101 S.Ct. 2153].) The reversal of a judgment refusing to terminate parental rights can potentially lead to the loss of such rights, and may itself directly cause the loss. (E.g., *In re Emily L.* (1989) 212 Cal.App.3d 734, 744 [260

Cal.Rptr. 810] [directing the superior court to free the minor from the custody and control of the respondent parent].) We do not read section 7895 as precluding the appointment of counsel in those situations, only as not requiring it in all cases.

In *Jacqueline H.*, *supra*, 21 Cal.3d at page 177, footnote 6, we found that the appellate court has *authority* to appoint appellate counsel for a parent when parental rights are at stake. Nothing in section 7895 eliminates this authority. Indeed, constitutional considerations may mandate the appointment of counsel at least on a case-by-case basis. The court in *Lassiter* v. *Department of Social Services*, *supra*, 452 U.S. at page 32 [68 L.Ed.2d at page 652], held that "the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the trial court, subject, of course, to appellate review."

We thus conclude that appellate courts have discretion to appoint counsel for responding parents upon request. Because of the fundamental importance to the parent and society of an accurate determination whether to terminate parental rights, counsel should be appointed whenever the appearance of counsel may reasonably affect the ultimate decision. Factors to consider are the nature of the ruling below, the complexity of the issues raised, whether the appellate court contemplates a decision adverse to the parent, and the consequences of any potential adverse ruling.

Normally an appellate court should appoint counsel for the respondent whenever the issues are complex or it contemplates reversing the judgment. There may conceivably be cases where the ultimate question is left for future determination in the trial court (at which the parent could have counsel), and where the error is so clear and the law so well settled, that appellate counsel properly could be denied despite a reversal. We need not decide now, in a vacuum, whether an appellate court may *ever* deny counsel to a respondent parent and then reverse the judgment. But counsel should, at least, be appointed whenever the appellate court contemplates rendering a decision, like that in *In re Emily L.*, *supra*, 212 Cal.App.3d 734, that itself terminates parental rights.

Because of the dynamic nature of the appellate process, an initial determination that counsel is not necessary is subject to change at any time. Thus, any order denying counsel is necessarily without prejudice to reassessment during the appeal. A request for counsel should always be deemed continuing. It should not be expected, or even desired, that unrepresented respondents who have requested counsel will renew the request. If, after initially

denying counsel, the court finds that counsel becomes warranted, it may, and should, make the appointment even in the absence of a renewed request.

Some appellate courts might find it more efficient, on balance, to exercise their discretion by granting counsel to all responding parents in termination cases, rather than on a case-by-case basis. We do not require or prohibit either practice. That is up to the courts themselves in the management of their dockets. We merely hold that appellate courts are not required to appoint counsel for all responding parents, but may, and sometimes must, appoint counsel in specific cases.

Father argues also that the state Constitution requires appointment of counsel. We need not determine the exact parameters of the constitutional right to counsel at this time, for we are confident that the appointment of counsel whenever needed under these standards is sufficient. Although the Constitution might prohibit terminating parental rights of an indigent who has requested and been denied counsel, it certainly does not require appointment of counsel in all cases. For example, a respondent who prevails on appeal despite the failure to appoint counsel can hardly have suffered a constitutional deprivation.

### D. *Application to This Case*

Father does not have an absolute right to counsel, but the Court of Appeal has discretion to appoint counsel for him. The order in this case suggests that the court denied counsel automatically, and not in the exercise of its discretion. Whether it should appoint counsel under the standards stated in this opinion is for that court to determine in the first instance. We therefore remand the matter to that court.

### III. DISPOSITION

The order of the Court of Appeal denying counsel is reversed and the matter is remanded for that court to exercise its discretion and determine whether to appoint counsel under the standards stated in this opinion.

Lucas, C. J., Mosk, J., Baxter, J., George, J., and Werdegar, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I concur in the judgment insofar as it reverses the Court of Appeal's order declining to appoint counsel to represent a minor child's father on an appeal in a proceeding to permanently sever the father's relationship with his child. I dissent from the judgment insofar as it grants the Court of Appeal discretion to again decline

to appoint counsel for the father, who has alleged that he lacks the funds to retain counsel to represent him on the appeal.[1]

Under the majority's holding, appointment of counsel for an indigent parent is mandatory if the parent is the party appealing but discretionary if the parent must respond to an appeal brought by another party. This result is both unprecedented and unjustifiable—unprecedented because in no other category of case does the entitlement to appointed counsel on appeal turn on whether the party seeking counsel is the appellant or the respondent; unjustifiable because there is no sound reason to make the right to appointed counsel depend on the status of the parent as appellant or respondent. Absent compelling evidence that the Legislature intended this result, we should reject a construction of the relevant statute that would make this unprecedented and unjustifiable system of procedure the law of this state.

The discretionary appointment system that the majority erects—under which an appellate court will be required to evaluate and essentially prejudge the merits of the appeal to determine whether to appoint counsel for the indigent responding parent—will inevitably delay the resolution of appeals in which the continued existence of a parent-child relationship is at issue, despite the strong public interest in a prompt resolution of these sensitive cases. And the majority's holding creates an unacceptable risk that the bond between parent and child will be forever broken only because the parent was unable to afford counsel and an appellate court refused to appoint counsel to assist the parent on appeal.

I cannot join in this result, which is not compelled by statute or precedent. Consistent with this court's unanimous decision in *In re Jacqueline H.* (1978) 21 Cal.3d 170 [145 Cal.Rptr. 548, 577 P.2d 683], and with the legislative history of Family Code section 7895, I would construe that provision to require, in proceedings to permanently remove a child from a parent's custody and control, the appointment of appellate counsel for every parent who is unable to afford counsel, whether or not the parent is the party appealing.

## I. PROCEDURAL HISTORY

Vernon S. (stepfather) petitioned the superior court to free his stepchild (Bryce) from the custody and control of the child's father, Jerome C.

---

[1]The majority does not mention the facts of this case, and it declines to decide whether, under its own standard, a refusal to appoint counsel for this father would be an abuse of discretion. The majority thus fails to provide guidance on the application of its own test, and it leaves open the possibility that the Court of Appeal may again deny this father's request for appointed counsel.

(father). After a two-day contested hearing, the superior court issued a statement of decision and a judgment denying the petition.

Stepfather appealed and, represented by two retained attorneys, filed an opening brief on appeal in which he argued that the judgment "should be reversed, and Bryce . . . should be declared free from the custody and control of his natural father." Representing that he lacked the means to retain counsel, and supporting this representation with a financial declaration, father asked the Court of Appeal to appoint counsel to represent him on the appeal. The Court of Appeal denied the request.

Father then petitioned this court for review of the order denying his request for appointment of counsel. We granted review and appointed counsel to represent father in this court.

## II. FACTS

The evidence presented at the hearing, viewed in the light most favorable to the judgment, reveals the following facts.

Father married Jennifer (mother) in 1984. Bryce, the only child of their marriage, was born in September 1985. Father and mother separated in 1986 and dissolved their marriage in July 1987. In the marital dissolution proceeding, the court granted mother primary physical custody of Bryce, giving father visitation rights and obligating him to pay $350 monthly for child support.

Although not obligated to do so, father maintained health coverage for Bryce through his employment as a correctional officer at Tehachapi State Prison. Mother began living with stepfather (a physician and the owner of a clinic at which mother worked as a nurse) in August or September of 1987. In 1988, mother obtained an assignment of father's wages to ensure payment of child support.

Father exercised his visitation rights with Bryce once a month until July 1989, when father was seriously injured while subduing an inmate who had assaulted two members of the prison staff. Because of these injuries, which eventually resulted in his forced disability retirement from the Department of Corrections, father ceased exercising his visitation rights with Bryce. In April 1990, mother stopped receiving child support for Bryce by means of

the wage assignment.[2] In June 1990, mother and stepfather moved to a new residence, with a new telephone number. They did not inform father of the move.

In December 1990, mother married stepfather. She did not inform father of the marriage. During the same month, father received papers concerning his disability retirement and decided to name Bryce as a beneficiary in the event of his death. In February or March 1991, father went to the home of Bryce's maternal grandmother in an attempt to reestablish contact with mother and Bryce and to obtain Bryce's Social Security number for inclusion on the beneficiary form for the disability retirement. The grandmother denied knowing where mother was living or what her telephone number was, but she nonetheless was able to telephone mother because mother had entered the number in the automatic dial mechanism of the grandmother's telephone. The grandmother telephoned mother in this manner and passed the receiver to father. When father asked for Bryce's Social Security number, explaining the purpose of the request, mother said she did not want any money from father and did not want Bryce to have any further contact with father.

Father then began searching in earnest for Bryce to exercise visitation and to reestablish the relationship. To this end, father contacted mother's place of employment five or six times, but on each occasion he was told that mother did not work there. Father's brother also contacted mother's place of employment, but he received the same reply. Father also contacted local schools, but found no record of Bryce's enrollment. Mother was not listed in any telephone directory, and father's attempts to locate her through the Department of Motor Vehicles were also unsuccessful. While he was attempting to reestablish contact with his son, father left Christmas presents, cards, and cash for Bryce at the grandmother's house.

In July 1992, father consulted Robert Vollett, a psychotherapist, for situational stress and depression. Vollett treated father for two months. The causes of father's depression included his forced disability retirement from the Department of Corrections and his inability to maintain contact with Bryce. Father explained that he had made numerous attempts to reestablish contact; Vollett found no reason to doubt father's sincerity.

---

[2]The reason for the termination of the wage assignment was not established. Mother speculated that it terminated because father was no longer regularly employed. Father disputed this theory, testifying that he continued to receive compensation from his employment during this period and that wage assignments for support of his children by a previous marriage continued without interruption. In argument, father's attorney implied that mother had voluntarily terminated the wage assignment as part of a plan to conceal Bryce from father.

About the same time, father encountered mother at a shopping mall with Bryce. Father told mother he wanted to talk to Bryce, but mother said that it was not an appropriate time and that she would call a security guard if he persisted. She promised to telephone father to discuss the situation, but she never did.

In September 1993, father discovered Bryce's name, with his address and telephone number, on the roster of a youth soccer team. Father telephoned mother and demanded visitation. Mother referred father to her attorney. Father then commenced a legal proceeding to enforce visitation. Mother and stepfather responded by commencing the instant proceeding to free Bryce from father's custody and control, as well as a separate proceeding to have stepfather adopt Bryce.

### III. Appointed Counsel on Appeal

The Legislature has established a procedure by which a superior court may permanently remove a child from the "custody and control" of one or both of the child's parents. (Fam. Code, § 7800 et seq.) The effect of a judgment so declaring is to finally terminate "all parental rights and responsibilities with regard to the child." (Fam. Code, § 7803.) During the proceedings in superior court, the Legislature has expressly provided that if the parent whose continued parental rights are at issue appears without counsel and is unable to afford counsel, the superior court must appoint counsel for the parent, absent a knowing and intelligent waiver of counsel. (Fam. Code, § 7862.) For proceedings on appeal, however, Family Code section 7895 on its face appears to require the appellate court to appoint counsel to represent the parent only if the parent is the party appealing and only if the child is a dependent child of the juvenile court.[3]

Based upon a superficial reading of Family Code section 7895, the majority concludes that parents who are respondents have no statutory right

---

[3]Family Code section 7895 provides:

"(a)  Upon appeal from a judgment freeing a child who is a dependent child of the juvenile court from parental custody and control, the appellate court shall appoint counsel for the appellant as provided by this section.

"(b)  Upon motion by the appellant and a finding that the appellant is unable to afford counsel, the appellate court shall appoint counsel for the indigent appellant, and appellant's counsel shall be provided a free copy of the reporter's and clerk's transcript. All of those costs are a charge against the state.

"(c)  The reporter's and clerk's transcripts shall be prepared and transmitted immediately after filing of the notice of appeal, at state expense and without advance payment of fees. If the appellant is able to afford counsel, the state may seek reimbursement from the appellant for the cost of the transcripts under subdivision (c) of Section 68511.3 of the Government Code as though the appellant had been granted permission to proceed in forma pauperis."

to appointed counsel on appeal. I disagree. When a court construes a statute, its aim is to determine and effectuate legislative intent. (*Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) Here, analysis of the statute's text and a review of its legislative history shows why the majority's shallow construction is not faithful to the Legislature's intent.

## A. *The Statutory Language*

Giving its words their ordinary meaning, Family Code section 7895 requires an appellate court to appoint counsel for a parent unable to afford counsel when (1) the appeal is taken from a judgment permanently removing a child from the parent's custody and control, (2) the child is a dependent child of the juvenile court, and (3) the parent is the appellant. On its face, the statute addresses the appellate court's obligation to appoint appellate counsel only when these three circumstances are present; it does not purport to address the power or duty of the appellate court to appoint counsel for a parent when one or more of these circumstances are absent.

Although the statute does not purport to deny the benefit of appointed appellate counsel to parents who are respondents rather than appellants, the majority infers that the Legislature so intended. The majority relies upon the general rule of statutory construction that "the use of specific words and phrases connotes an intent to exclude that which is not specifically stated." (*In re Hubbard* (1964) 62 Cal.2d 119, 126-127 [41 Cal.Rptr. 393, 396 P.2d 809]; accord, *Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745] ["The expression of some things in a statute necessarily means the exclusion of other things not expressed."]; *Seidler* v. *Municipal Court* (1993) 12 Cal.App.4th 1229, 1236 [16 Cal.Rptr.2d 90] ["Where a statute enumerates those persons to whom it applies, it should be construed as excluding from its effect all those not mentioned expressly."].)

But this rule of construction is not "immutable." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657].) The rule "must yield to the intention of the Legislature" (*Worthington* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 388 [134 Cal.Rptr. 507]), and "[t]he quest after legislative purpose remains paramount whether the statutory expression be general or particular" (*Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 21 [51 Cal.Rptr. 881, 415 P.2d 769]). More specifically, a statute's specific enumeration will not be construed as excluding persons or things not enumerated when "no manifest reason exists why other persons or things than those enumerated should not be included and

thus exclusion would result in injustice." (*Estate of Banerjee, supra,* at p. 539, fn. 10; accord, *In re Joseph B.* (1983) 34 Cal.3d 952, 957 [196 Cal.Rptr. 348, 671 P.2d 852]; *People* v. *Rojas* (1975) 15 Cal.3d 540, 551 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127].) This exception applies here. To explain why this is so, I consider next the legislative history of Family Code section 7895.

## B. *Legislative History*

Family Code section 7895 was enacted in 1992 as part of the new Family Code. (Stats. 1992, ch. 162, § 10.) The Law Revision Commission comment to this code section states that it continues without substantive change the provisions of former section 237.7 of the Civil Code. (Cal. Law Revision Com. com., 29E West's Ann. Fam. Code, § 7895 (1994 ed.) p. 294.) This court has recognized that Law Revision Commission comments are usually a reliable guide to legislative intent. (See, e.g., *Estate of Propst* (1990) 50 Cal.3d 448, 460 [268 Cal.Rptr. 114, 788 P.2d 628]; *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1990) 50 Cal.3d 31, 38, fn. 8 [265 Cal.Rptr. 801, 784 P.2d 1373].)

Former section 237.7 of the Civil Code was enacted in 1984. (Stats. 1984, ch. 605, § 1, p. 2326.) As originally enacted, it provided:

"Upon appeal from a judgment freeing a minor who is a dependent child of the juvenile court from parental custody and control, the appellate court shall appoint counsel for the appellant as provided by this section.

"Upon motion by the appellant and a finding that the appellant is unable to afford counsel, the appellate court shall appoint counsel for the indigent appellant, and appellant's counsel shall be provided a free copy of the reporter's and clerk's transcript. All of those costs shall be a charge against the state."

In the same measure, the Legislature enacted former section 45 of the Code of Civil Procedure.[4] It provided: "An appeal from a judgment freeing a minor who is a dependent child of the juvenile court from parental custody and control shall have precedence over all cases in the court to which an appeal in the matter is taken. In order to enable the child to be available for adoption as soon as possible and to minimize the anxiety to all parties, the

---

[4]Code of Civil Procedure former section 45 was amended in 1988 (Stats. 1988, ch. 805, § 1, p. 2604), but the amended statute expired by its own terms on January 1, 1993, and was replaced by a new provision in language identical to that quoted in the text (see *id.,* § 2, pp. 2604-2605).

appellate court shall grant an extension of time to a court reporter or to counsel only upon an exceptional showing of good cause." (Stats. 1984, ch. 605, § 2, p. 2326.)

The original purpose of this legislation becomes clear upon examination of contemporary legislative sources, and in particular legislative committee reports. These reports are subject to judicial notice (see Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a); *Manufacturers Life Ins. Co.* v. *Superior Court* (1995) 10 Cal.4th 257, 276, fn. 9 [41 Cal.Rptr.2d 220, 895 P.2d 56]) and are proper sources for determining legislative intent (see *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149]; *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326]).

The files of the Senate Policy Committee contain a letter from a superior court judge, dated December 6, 1983, requesting Senate consideration of a statutory amendment proposed by a deputy county counsel, and the files also contain the deputy county counsel's explanation of this proposal. As noted more fully below, the committee reports of both the Senate and the Assembly quote from and adopt the reasoning of the deputy counsel's explanation, and for this reason it may properly be considered as part of the statute's legislative history. The explanation opens with this description of the problem that his proposal was designed to address:

"At the present time, children who have been freed from parental care and control pursuant to Civil Code [former] Section 232 cannot have their adoptive placement finalized until all appellate issues have been resolved. Thus, many children are placed in a legally uncertain legal position so long as the appellate process is active. It can take several years from the time the natural parent(s) file a notice of appeal until the remittitur is issued. Sometimes it takes longer than four years for the appellate process to be exhausted." (Enclosure to letter from Judge Barbara Jean Johnson to Sr. Consultant to Sen. David Roberti (Dec. 6, 1983) regarding proposed amend. to Welf. & Inst. Code, § 395, p. 1.)

To remedy this problem, the deputy county counsel proposed that section 395 of the Welfare and Institutions Code (relating to appeals in dependency cases) be amended to provide (1) that an appeal from a judgment declaring a dependent child of the juvenile court free from parental custody and control "shall have precedence over all other cases," and (2) that on such appeals the appellate courts shall appoint counsel for parents who are unable to afford counsel. (Enclosure to letter from Judge Barbara Jean Johnson, *supra*, at p. 3.)

The deputy county counsel explained that the proposed provision mandating appointment of counsel would not require any new expenditure of public funds because it was merely declaratory of existing law:

"The State Supreme Court in 1978, *In re Jacqueline H.,* 21 Cal. 3d 170, 176-177, held that indigent appellants who have lost custody of their children pursuant to Civil Code [former] Section 232 are entitled to an appointed appellate attorney and free transcripts. Thus, the courts have already extended what this proposed legislation codifies.

"The reason it needs to be codified as opposed to being extended only in case law is the confusion and delays that are caused with respect to appeals from Civil Code [former section] 232 cases. For example, I was informed the Fifth Appellate District treats these cases like criminal matters (which they are not) so counsel can be appointed. The bottom line is no reasonably competent attorney or court reporter is going to work for free. The court reporter will simply not prepare the transcript until he or she is assured of being paid. Likewise, the attorney is only going to file a brief in a timely manner if he or she is going to get paid.

"Eventually, the appellate courts see to it that somehow the reporter and attorney are paid. But when there are case rights extended by the courts with no statutory provision for such rights, confusion and delays will continue to occur." (Enclosure to letter from Barbara Jean Johnson, *supra,* at p. 2.)

This proposal was introduced in the Legislature as Senate Bill No. 1912 (1983-1984 Reg. Sess.) on February 15, 1984. In its original form, the bill would have enacted the proposal's substantive provisions in a new section 240 of the Civil Code rather than, as the deputy county counsel had proposed, in an amended section 395 of the Welfare and Institutions Code. Later, on recommendation of the Judicial Council, the bill was amended to move the bill's provisions to what proved to be their ultimate destinations. One provision—giving preference to appeals from judgments declaring children free from parental custody and control—was placed in a proposed section 45 of the Code of Civil Procedure; the other provision—providing for appointment of counsel on appeal—was placed in a proposed section 237.7 of the Civil Code. (Sen. Bill No. 1912 (1983-1984 Reg. Sess.), as amended Mar. 19, 1984.)

Senate committee reports are consistent with the deputy county counsel's explanation of the purpose of the proposed legislation. For example, an analysis of the Senate Committee on Judiciary describes the purpose of the bill this way:

"In *In re Jacqueline H.* (1978) 21 C.3d 170, the California Supreme Court held that an indigent appellant is entitled to appointed counsel on appeal from an action declaring that a child is free from parental custody and control. [¶] This bill would codify that requirement and would also grant a calendar preference to appeals from such actions. [¶] The purpose of this bill is to clarify the law regarding appointed counsel in these cases and to expedite appeals from freedom from custody and control actions." (Sen. Judiciary Com., Analysis of Sen. Bill No. 1912 (1983-1984 Reg. Sess.) as amended Mar. 19, 1984, p. 2.)

The same report also states: "According to proponents, codification is necessary because 'confusion and delays' result when rights are extended by the courts rather than by statute." (Sen. Judiciary Com., Analysis of Sen. Bill No. 1912, *supra*, p. 3.)

A report of the Senate Finance Committee states that "[c]ase law has already specified that indigent appellants unable to afford counsel will be provided a court-appointed attorney and they have also been provided transcripts and records as requested. Therefore, this bill codifies current practice and should not impose any additional costs upon the courts." (Sen. Fin. Com., Analysis of Sen. Bill No. 1912 (1983-1984 Reg. Sess.), as amended Mar. 19, 1984, p. 2.)

Assembly committee reports reflect the same understanding of the bill's purpose and effect. For example, a report of the Assembly Committee on the Judiciary states: "This bill is intended to expedite the hearing of appeals of judgments freeing a minor from parental custody and control and to codify existing case law that indigent appellants in these appeals are entitled to court appointed counsel and free transcripts." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1912 (1983-1984 Reg. Sess.) as amended Mar. 19, 1984, p. 1.)

The report further explains: "The provision of this bill which requires the appellate court to appoint counsel for an indigent appellant would codify existing case law. In *In re Jacqueline H.*, 21 Cal.3d 170 (1978), the California Supreme Court held that an indigent appellant is entitled to appointed counsel on appeal. The Court stated, 'The Legislature could not have intended to withhold from an indigent parent the right to an *effective* appeal, and therefore, the services of appellate counsel in these proceedings.' According to the proponents, codification of this common law is necessary because confusion and delay result when rights are extended by the courts rather than by statute. The provision of this bill which provides an indigent appellant's attorney with free transcripts also codifies case law, namely

*Crespo* v. *Superior Court*, 41 Cal.App.3d 115 [115 Cal.Rptr. 681] (1974)." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1912, *supra*, pp. 1-2.)

As this contemporary evidence demonstrates, in enacting former section 237.7 of the Civil Code the Legislature was concerned with the plight of dependent children of the juvenile court in foster care whose adoption proceedings were postponed for years while appellate courts decided appeals from judgments freeing the children from parental custody and control. To expedite those appeals, the Legislature codified the holding of *In re Jacqueline H.*, *supra*, 21 Cal.3d 170 (hereafter *Jacqueline H.*) as it applied to dependent children whom the superior courts had declared free of parental custody and control. To better understand this legislative purpose, I next consider this court's decision in *Jacqueline H.*

### C. *Jacqueline H.*

In *Jacqueline H.*, *supra*, 21 Cal.3d 170, the Los Angeles County Department of Adoptions had petitioned under former section 232 of the Civil Code to terminate a mother's parental rights in her daughter. The superior court appointed counsel for the mother, who was indigent. After a hearing on the petition, the court granted judgment terminating the mother's parental rights. Still assisted by her appointed trial attorney, the mother appealed from the judgment and requested free transcripts of the superior court proceedings. The mother's attorney then withdrew from the case.

The Court of Appeal dismissed the appeal when the mother failed to timely submit an opening brief. The mother asked the Court of Appeal to vacate the dismissal and to appoint counsel to represent her on the appeal. The Court of Appeal denied the request. This court then granting a hearing.

This court noted that the statutory scheme for declaring a child free from parental custody and control included a provision (Civ. Code, former § 237.5) requiring the superior court to appoint counsel for a parent who was unable to afford counsel, unless the parent made a knowing and intelligent waiver of counsel. Although the statutory scheme did not expressly provide for appointment of counsel on appeal, this court concluded, in a unanimous opinion, that "the right to such appointment appears implicit in the Legislature's entire statutory scheme for the removal of children from the custody and control of their parents." (*Jacqueline H.*, *supra*, 21 Cal.3d 170, 175.)

This court observed that in juvenile court dependency proceedings (Welf. & Inst. Code, § 300 et seq.), appointment of counsel for indigent parents was then authorized at all stages, including appeal. Although no statute expressly

authorized appointment of counsel on appeal in dependency actions, the Court of Appeal, in *In re Simeth* (1974) 40 Cal.App.3d 982 [115 Cal.Rptr. 617], had inferred a right to appointed counsel from other elements of the statutory scheme. (*Jacqueline H., supra,* 21 Cal.3d 170, 176.) This court observed that a judgment adverse to a parent in a juvenile court dependency proceeding resulted only in "a temporary loss of custody, not a permanent severance of the parent-child relationship."[5] (*Jacqueline H., supra,* at p. 175.) Therefore, as this court noted, "an adverse judgment in a [Civil Code former] section 232 proceeding is far more serious than is one in a dependency proceeding." (*Jacqueline H., supra,* at p. 175.) This court concluded that it would be "anomalous indeed" to grant indigent parents a right to appointed counsel on appeal in dependency proceedings but not in proceedings under former section 232 of the Civil Code. (*Jacqueline H., supra,* at p. 176.)

This court found "additional support" for the conclusion "that an indigent appellant is entitled to appointed counsel on appeal in [Civil Code former] section 232 proceedings" in the law governing proceedings under former section 226a of the Civil Code to withdraw parental consent to an adoption. (*Jacqueline H., supra,* 21 Cal.3d 170, 177.) Because orders "granting or withholding approval of a withdrawal of a consent to an adoption" were subject to appeal "in the same manner as an order of the juvenile court declaring any person to be a ward of the juvenile court" (Civ. Code, former § 226a),[6] it necessarily followed that the holding of *In re Simeth, supra,* 40 Cal.App.3d 982, recognizing a right of appointed counsel on appeal in dependency cases, extended also to appeals from orders granting or denying petitions to withdraw parental consent to an adoption.

Comparing proceedings to withdraw parental consent to adoption with proceedings to terminate parental rights under former section 232 of the Civil Code, this court noted that although both types of proceedings could result in permanent loss of parental rights, proceedings under former section 232 of the Civil Code could also result in the parent being "branded as unfit," and therefore "the need for appellate counsel is greater in a [Civil

[5]When this court decided *Jacqueline H., supra,* 21 Cal.3d 170, juvenile courts in dependency proceedings lacked authority to terminate parental rights. They received that authority by legislation enacted in 1987. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 302-304 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

[6]This provision continued in effect as subdivision (e) of former section 8815 of the Family Code until January 1, 1995. On that date, court proceedings to withdraw consent to independent adoptions were replaced by the procedure now specified in Family Code sections 8814.5 and 8815, under which birth parents have 120 days after signing a consent to adoption to either revoke the consent or waive the right to revoke. If the parent does neither, the consent becomes permanent on the 121st day. (See also Fam. Code, §§ 8700 [agency adoption], 9005 [stepparent adoption].)

Code former] section 232 appeal than in a [Civil Code former] section 226a appeal." (*Jacqueline H., supra*, 21 Cal.3d 170, 177.)

Summing up, this court said: "For all of the foregoing reasons, this court concludes that the Legislature could not have intended to withhold from an indigent parent the right to an *effective* appeal, and, therefore, the services of appellate counsel in [Civil Code former] section 232 proceedings. Accordingly, this court construes Civil Code [former] sections 237.5 and 238 to require a reviewing court to appoint counsel for any indigent parent appealing from an order terminating parental rights pursuant to Civil Code [former] section 232." (*Jacqueline H., supra*, 21 Cal.3d 170, 177, original italics, fn. omitted.)

Nothing in our opinion in *Jacqueline H., supra*, 21 Cal.3d 170, suggests that the holding was limited to parents of children who were juvenile court dependents, or that the child's status as a juvenile court dependent was even relevant. This court retransferred the case to the Court of Appeal "with directions to appoint counsel for appellant," without ever indicating whether or not the appellant's child was a dependent child of the juvenile court.[7] (*Jacqueline H., supra*, 21 Cal.3d 170, 180.)

Moreover, nothing in our opinion in *Jacqueline H., supra*, 21 Cal.3d 170, suggests that the holding was limited to parents who were appellants rather than respondents on the appeal. On the contrary, this court inferred a legislative intent to give parents in freedom from custody and control proceedings a right to appointed appellate counsel comparable to the right of parents in dependency proceedings and in proceedings to withdraw consent to adoption. The right to appointed appellate counsel in dependency proceedings had never been limited to parents who are appellants. (See *In re Marilyn H., supra*, 5 Cal.4th 295, 307-308 [stating that the safeguards "built into the current dependency scheme" include "representation by counsel to assist parents at every stage of the proceedings"]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 191 [23 Cal.Rptr.2d 482] [parents who were respondents on appeal in dependency proceeding represented by appointed counsel].) And, in proceedings to withdraw consent to adoption this court recognized that the right to appointed counsel on appeal extended to appeals of orders " '*granting or withholding* approval of a withdrawal of consent.' " (*Jacqueline H., supra*, 21 Cal.3d 170, 177, italics added, quoting Civ. Code, former § 226a.)

---

[7]The Court of Appeal's subsequent opinion in the case reveals that the child was in fact a juvenile court dependent. (*In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 811 [156 Cal.Rptr. 765].)

D. *Construction of Family Code Section 7895*

Having reviewed the legislative history of Family Code section 7895, including this court's decision in *Jacqueline H., supra*, 21 Cal.3d 170, I find no evidence of a legislative intent to impose new restrictions on the previously established right of indigent parents to appointment of appellate counsel in a proceeding to free a minor child from the parent's custody and control, whether or not the child was a dependent child of the juvenile court, and whether or not the parent was the appellant.

As noted earlier, a court should construe a statute to include persons not mentioned in the statute when there is no manifest reason for their exclusion and exclusion would result in injustice. (*Estate of Banerjee, supra*, 21 Cal.3d 527, 539, fn. 10.) Applying this rule, I would construe Family Code section 7895 to require appointment of appellate counsel for all parents unable to afford counsel, whether or not the child is a dependent child of the juvenile court and whether or not the parent is the party who brought the appeal.

There is no manifest reason to exclude parents of children who have not been made dependent children of the juvenile court. As we have seen, in adopting former section 237.7 of the Civil Code, the predecessor of Family Code section 7895, the Legislature intended merely to codify the holding of *Jacqueline H., supra*, 21 Cal.3d 170, and that holding recognized a right to appointment of appellate counsel for indigent parents appealing from judgments freeing their children from their custody and control, without regard to whether the children were juvenile court dependents. (See *Appellate Defenders, Inc. v. Cheri S.* (1995) 35 Cal.App.4th 1819 [42 Cal.Rptr.2d 195].)

Nor is there any manifest reason to exclude from the class of indigent parents entitled to appointed counsel on appeal those parents who are respondents rather than appellants. In this respect, I agree with a published opinion of the Illinois Court of Appeal. That court was called upon to interpret a statute that, like Family Code section 7895, "superficially appears to be aimed at the parents as appellants." (*In Interest of Harrison* (1983) 120 Ill.App.3d 108, 112 [76 Ill.Dec. 7, 458 N.E.2d 146, 149].) The court declined to construe the statute in a way that would make entitlement to appointed counsel depend on which party brought the appeal because, in the court's words, "it would be illogical and irrational to allow counsel for the parents as appellants but deny it as appellees." (*Ibid.*)

E. *The Majority Opinion*

The majority attempts to justify affording a right to appointed counsel on appeal to indigent parents when they are appellants but not when they are

respondents. The majority states, for example, that appellants have the burden of perfecting the appeal, that appellants must identify and argue the points of error, and that appellants must overcome the presumptions in favor of the judgment. (Maj. opn., *ante*, at p. 232.) Similarly, the majority notes that an appellant's failure to file a brief will result in dismissal of the appeal, but a respondent's failure to file a brief will not result in dismissal, but "only" in the appellate court's accepting as true the recitation of facts in the appellant's brief. (*Id.* at pp. 232-233.) Thus, the majority concludes that many appeals will be resolved in the respondent's favor "even absent a brief or other appearance by the respondent." (*Id.* at p. 233.)

Much the same argument could be made for denying indigent parents a right to counsel in the trial court. In the trial court, the party seeking to remove the minor child from the parent's custody and control will be required to commence the action by drafting and filing a petition and will have the burden of proof at trial. If the party bringing the action does not present evidence sufficient to support a judgment freeing the child from the parent's custody and control, the parent will prevail even if the parent presents no evidence and does not appear at the trial. Using the majority's faulty logic, indigent parents should not have a right to appointed counsel in the trial court because they do not have the burden of bringing or proving the action.

Fortunately, the Legislature has decided otherwise, granting all indigent parents a right to counsel at trial in proceedings to remove minor children from their parents' custody and control. (Fam. Code, § 7862.) The Legislature no doubt recognizes that the right to counsel is the most basic procedural right a litigant may have, because without the assistance of counsel a party may be unable to secure other rights during litigation. (See *Kimmelman* v. *Morrison* (1986) 477 U.S. 365, 377 [91 L.Ed.2d 305, 320-321, 106 S.Ct. 2574]; *United States* v. *Cronic* (1984) 466 U.S. 648, 653-654 [80 L.Ed.2d 657, 664, 104 S.Ct. 2039]; *Powell* v. *Alabama* (1932) 287 U.S. 45, 68-69 [77 L.Ed. 158, 170, 53 S.Ct. 55, 84 A.L.R. 527].) No doubt the Legislature also recognizes that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage" because "[b]oth stages . . . require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over" (*Penson* v. *Ohio* (1988) 488 U.S. 75, 85 [102 L.Ed.2d 300, 109 S.Ct. 346]).

Recognizing that in most cases appellate counsel will be indispensable to a fair appellate proceeding, the majority establishes a system of discretionary appointment of counsel to represent indigent parents on appeal when the

parents are respondents rather than appellants. The majority proclaims that under this system "[n]ormally an appellate court should appoint counsel for the respondent whenever the issues are complex or it contemplates reversing the judgment." (Maj. opn., *ante*, at p. 234.)

Of course, an appellate court will not know whether it "contemplates reversing the judgment" until it has studied the record and reviewed the appellant's opening brief. But delaying the appointment of counsel to this late stage will unreasonably prolong the appellate process, because after appointment an attorney may require weeks and perhaps months to review the record and the opening brief, research the law, draft the respondent's brief, proofread the brief, and serve and file the brief in the Court of Appeal. The majority's system is about as practical as a discretionary system of appointed trial counsel in which counsel is appointed for the parent only if, after considering the evidence offered to establish grounds for terminating parental rights, the trial court is contemplating granting the requested relief. Both systems are equally impractical, because both require the court to prejudge the merits of the case and both introduce extended delays into the orderly processing of the case.

Perhaps because it recognizes just how awkward a system it is proposing, the majority states that "appellate courts might find it more efficient, on balance, to exercise their discretion by granting counsel to all responding parents in termination cases, rather than on a case-by-case basis." (Maj. opn., *ante*, at p. 235.) I agree that considerations of efficiency (and fairness also) weigh strongly in favor of a system in which all parents in termination-of-parental-rights cases who cannot afford counsel on appeal will have counsel appointed for them. Where I differ from the majority is that I would not attribute to the Legislature an intent to erect a system of appointed appellate counsel that is less efficient, less fair, and less rational.

## Conclusion

A parent and child "share a vital interest in preventing erroneous termination of their natural relationship." (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 760 [71 L.Ed.2d 599, 611, 102 S.Ct. 1388].) To protect that interest, few safeguards are as important as the assistance of counsel. Because representation by counsel is critical both at trial and on appeal, and because lack of representation can be every bit as devastating whether a parent has prosecuted the appeal or is responding to an appeal brought by another party, I would not attribute to the Legislature an intent, reflected nowhere in the legislative history of Family Code section 7895, to grant a right to appellate counsel to parents as appellants but not as respondents.

Here, a party whose parental rights are at stake has requested that the Court of Appeal appoint counsel to represent him on an appeal and has submitted a declaration showing that he lacks the financial ability to retain counsel. I would reverse the order of the Court of Appeal denying his request and remand with directions to the Court of Appeal to grant the request for appointed counsel.