EDWARD J. ROSEWELL, Respondent-Appellant, v. THOMAS P. HANRAHAN, Petitioner-Appellee.

First District (4th Division)    No. 86—3176

Opinion filed March 24, 1988.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon, and Sean P. Fitzgerald, Assistant State's Attorneys, of counsel), for appellant.

Thomas P. Hanrahan, of Chicago, appellee *pro se.*

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

On March 8, 1985, the maternal grandparents of five-year-old John Kevin Bradford filed a petition in the circuit court of Cook County to adopt the child. In their petition they alleged that the biological parents were unfit under sections 1(d)(a) through (c) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, pars. 1501(D)(a) through (c)). Specifically, they alleged that the child had resided with the grandparents since March 7, 1980, and that his biological mother and father abandoned the child without showing a reasonable degree of care or interest.

A guardian *ad litem* was appointed to represent the child. Initially, Wilma Bradford, the biological mother, filed a *pro se* appearance. At a subsequent hearing, the trial judge appointed private counsel, Thomas Hanrahan, petitioner, to represent Wilma Bradford and the father. The order does not state the basis for the appointment of Hanrahan.

Prior to trial the court ordered the Cook County Department of Supportive Services to conduct a social investigation on all of the parties to the proceeding.

Before the end of the trial, the parties entered into an agreed order whereby the maternal grandparents were awarded permanent custody of John Kevin Bradford. The order also stated that Hanrahan

had 21 days to file a petition for fees. Hanrahan's petition for fees was granted, and the trial judge ordered the Cook County treasurer to pay for his representation in the matter.

Thereafter, respondent, Cook County Treasurer Edward J. Rosewell, filed a motion to vacate the order to pay fees. Because the case had been transferred, the motion was not heard by the judge who had originally appointed Hanrahan to serve as counsel. At the hearing on the motion, the guardian *ad litem* testified that Wilma Bradford told the trial judge that she had no independent means to hire private counsel and had attempted to secure representation from various legal aid organizations but was turned down. The record does not indicate why the legal aid organizations would not represent Wilma Bradford. The motion to vacate the order awarding fees was denied on the basis that due process required the appointment of counsel.

On appeal, respondent argues that because there was no statutory basis for the court to appoint a government-paid attorney, the trial court erred in awarding fees to Hanrahan. Hanrahan concedes that there is no statutory basis for appointing him as counsel but argues that under the due process clause of the United States Constitution (U.S. Const., amend. XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, §2), Wilma Bradford was entitled to a court-appointed attorney because she was indigent. Respondent replies that there is no due process claim to a right to counsel because the case at bar does not involve State action.

■■ Proceedings to adopt are governed by the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501 *et seq.*). Sections 1(D)(a) through (p) list separate legal grounds for finding a person unfit. The only provision of the Act that allows for the appointment of counsel for the biological parents of a child sought to be adopted is section 13(B)(c) (Ill. Rev. Stat. 1985, ch. 40, par. 1516(B)(c)). That provision basically allows for the appointment of private counsel in situations where the person is indigent, the Guardianship and Advocacy Commission or the Office of the Public Defender is unavailable, and the person is alleged to be unfit to be a parent due to a physical or mental illness. Since Wilma Bradford was never alleged to be unfit due to any mental or physical illness, she did not fall within the category of those persons entitled to appointment of counsel under the Adoption Act.

■ The due process clause protects individuals from actions by the State, not actions by individuals. (*USA I Lehndorff Vermoegensverwaltung v. Cousins Club, Inc.* (1976), 64 Ill. 2d 11, 348 N.E.2d 831.) The question to ask in determining whether there has been State action to trigger a due process claim is whether the State is sig-

nificantly involved in the action which induced the complaint. (*Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449.) Although there is no set definition, the State is said to be significantly involved when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action is said to be that of the State. *Blum v. Yaretsky* (1982), 457 U.S. 991, 1004, 73 L. Ed. 2d 534, 546, 102 S. Ct. 2777, 2785.

Hanrahan maintains that there is sufficient State action because the petition to adopt was instituted pursuant to a State statute and the State provides a forum for the action. In support of his argument, Hanrahan cites *Boddie v. Connecticut* (1971), 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780. In *Boddie*, the Supreme Court held that a State statute which required all couples seeking a divorce, including indigent couples, to pay a $65 court cost fee was a violation of due process because it denied access to the courts based on the inability to pay. The State action which denied due process was the State procedure of charging all couples $65, thereby denying access to those who could not afford the fee.

We fail to see how *Boddie* sheds light on the issue of whether there was sufficient State action in a private adoption proceeding to trigger a due process claim. The parents in the instant case were not denied access to the courts. Further, we are unaware of any authority that has construed *Boddie* as supporting the proposition that an indigent has a right to counsel in a lawsuit, such as a divorce proceeding or an adoption proceeding, which is strictly between private individuals. See Annot., 85 A.L.R.3d 983, 985 (1978).

■ There is nothing in the record to indicate that there has been any significant involvement by the State either by the respondent or any other agent of the State. The petition for adoption was filed by the maternal grandparents. There is no indication that the State or any of its agencies participated in the proceedings or sought to encourage the filing of the petition or subsequent order of permanent custody. The mere fact that there is a statute which allows for individuals to bring private adoption proceedings does not of itself turn this action into "State" action.

We note that a majority of Hanrahan's brief is devoted to a discussion of *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153. In *Lassiter*, the Supreme Court held that the termination of the relationship between parent and child must be accomplished by procedures which meet the requisites of the due process clause. The Court further held that the question of whether due process requires that an indigent is entitled to ap-

pointed counsel in such proceedings depends on an evaluation of a number of factors which are to be applied on a case-by-case basis.

Hanrahan's reliance on *Lassiter* is misplaced because in *Lassiter* the existence of State action was not in dispute. The Supreme Court emphasized that North Carolina was directly involved in an adversarial position with the parents in the termination proceedings. It was the county department of social services that instigated the termination of parental rights proceedings, and therefore it was the State action which triggered the due process analysis.

Termination of parental rights is obviously a situation of enormous concern to all parties involved in the proceedings. However, we are powerless to mandate the county to pay for the costs of an attorney in those proceedings absent statutory authorization or a deprivation of any constitutional right.

The judgment of the circuit court of Cook County is reversed.

Reversed.

JOHNSON and McMORROW, JJ., concur.