THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* EFFIE WILLIAMS, Plaintiff-Appellee, v. RONALD RHODES, Defendant-Appellant.

Fourth District   No. 4—88—0680

Opinion filed June 22, 1989.

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

Defendant Ronald Rhodes appeals from an order of the circuit court of Champaign County entered September 13, 1988, in which the court accepted his stipulation and admission to the offense of indirect criminal contempt for violating the terms of a plenary order of protection previously entered against him on September 25, 1987. He maintains for the first time on appeal that that order of protection was void and must be vacated because the court violated his due process rights when it failed to appoint counsel to represent him prior to entry of that order. We disagree and, therefore, affirm.

Effie Williams, defendant's wife, petitioned that court for an order of protection on September 18, 1987. (Ill. Rev. Stat. 1987, ch. 40, par. 2312—2.) The court entered an emergency order of protection on her behalf and continued the matter until September 25, 1987, when it held a hearing on her petition. On that date, both Williams and defendant appeared *pro se.*

At the hearing, the court determined Williams still desired to pursue her request for an order of protection and was taking further action to dissolve the marriage. The court further explained to defendant the contents of the petition and court record and the relief sought by Williams. When the court asked defendant whether he had any questions concerning what it had just told him, defendant responded, "No, I don't understand none of it."

The court subsequently asked defendant whether he had committed the acts as alleged in the petition. Defendant admitted he had

"pushed her, laid her on the bed, and said cool out." He further admitted he had slapped her on at least one occasion. The court then entered the previously described plenary order of protection against defendant on September 25, 1987, to expire on September 1, 1989.

To support his contention that his due process rights were violated as he was indigent and the trial court failed to appoint counsel for him prior to entering the order of protection, defendant relies upon *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153. There, a trial court had refused to appoint counsel for an indigent woman in a proceeding brought by the State to terminate her parental rights. The Supreme Court rejected her claim of a violation of her due process rights under the circumstances present there, concluding that constitutional provision did not require appointment of counsel in every termination of parental rights case.

The State first attempts to distinguish *Lassiter* by claiming that, here, as in *Rosewell v. Hanrahan* (1988), 168 Ill. App. 3d 329, 523 N.E.2d 10, an *individual* filed a petition to begin private proceedings. Since that claim involved no State action, no due process clause protections arose. While we generally agree with the State's argument, we also conclude that, even if the State were the petitioner in the underlying suit when the protection order was entered, defendant still would not have had a right to appointed counsel.

■ The Supreme Court in *Lassiter* indicated the decision as to whether due process required appointment of counsel for indigent persons in a case of that nature was to be made by balancing the following three elements: the private interests; the governmental interests; and the risk the procedures used would lead to erroneous decisions. In balancing those interests in the *Lassiter* decision, the court recognized a parent's interest in the care and custody of his or her children was an important one which warranted protection, especially in those cases involving a termination of all parental rights. Likewise, the State had an interest in the welfare of the child and desired an accurate and just decision, although it also possessed a pecuniary interest in making the decision in the most economical manner possible.

The court further analyzed the State procedures present in the case. It noted the proceedings could be complex and involve parents with little education which might make the risk of error extremely high in some cases. However, after examining the facts of the case before it, the court decided the presence of counsel would not have made a determinative difference there. The court therefore concluded the trial court did not err in failing to appoint counsel for the indigent

mother whose parental rights were terminated.

Here, defendant contends a balancing of those factors in his case leads to a result in his favor. He claims his familial interest in his 12-year-old stepson and his property interest in his marital residence outweigh any economic interest the State might have in avoiding additional legal expenses. Further, he argues the risk of an erroneous decision here is high, especially considering his statement to the court that he did not understand the proceedings involved.

We find defendant's arguments to be unpersuasive. At the time of the hearing on the petition for order of protection, defendant and Williams had been married for only three months. The 12-year-old boy was not defendant's own biological child, and defendant had not legally adopted him. While we acknowledge the court's order also served to protect the boy, Williams was the subject of abuse, and the order did not prohibit all contact with the boy. We note, too, that, unlike the complete termination of parental rights involved in *Lassiter*, any deprivation suffered by defendant here was only temporary in nature because the order was to expire after a two-year period. This case differs in substance from our decision in the case of *In re T.W.* (1988), 166 Ill. App. 3d 1022, 520 N.E.2d 1107, only in that there the contemnor of an order of protection was unrelated to the children protected by the order. We held that order of protection to be valid although the contemnor had been refused appointed counsel even though he was indigent.

With regard to his alleged property interest, defendant has cited no cases, nor do we know of any, which indicate an indigent person is entitled to counsel when deprivation of an interest in property is involved.

The State possesses an important interest in these types of proceedings in preventing the occurrence of spousal abuse and other acts of domestic violence. Again, the State also has an interest in insuring that these proceedings are conducted in an economical manner. Interests in informality, flexibility, and economy need not always be sacrificed in order to satisfy due process. *Lassiter*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153.

■■ ■ In the instant proceedings, it was the court's role to determine whether petitioner had been abused by a family or household member. (Ill. Rev. Stat. 1987, ch. 40, par. 2312—14.) Williams in her petition had alleged defendant had committed several acts of abuse on her. When the court questioned defendant concerning those acts, defendant acknowledged he had struck and pushed Williams on at least one occasion. Under these circumstances, we cannot conclude

the presence of counsel at the hearing on the petition for an order of protection would have made a determinative difference.

The protection order was not void for failure to afford defendant due process. Defendant was required to obey that order and was properly found in indirect criminal contempt when he failed to do so. For the reasons stated, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.