(No. 90407.—

*In re* ADOPTION OF K.L.P., a Minor (R.R.E. *et al.*, Appellees, v. R.P., Appellee; The County of Kendall, Appellant).

*Opinion filed January 25, 2002.*

450

THOMAS, J., took no part.
FREEMAN, J., specially concurring.

Timothy J. McCann, State's Attorney, of Yorkville (Norbert J. Goetten, Martin P. Moltz and Gregory L. Slovacek, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for appellant.

Anna Marie Wilhelmi, of Aurora, for appellee R.P.

JUSTICE GARMAN delivered the opinion of the court:

R.R.E. and his wife, T.M.D., filed a petition in the circuit court of Kendall County seeking to adopt his two daughters from an earlier relationship with R.P. On October 4, 1999, the circuit court of Kendall County terminated the parental rights of R.P., pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998)). R.P., whose request for court-appointed counsel had been denied by the circuit court, promptly filed notice of appeal. The appellate court, on its own motion, appointed attorney Anna Wilhelmi to represent R.P. on

appeal. When Wilhelmi sought payment of interim fees for her services, the appellate court entered an order directing the treasurer of Kendall County to pay her $3,847.55 in reasonable attorney fees although the county had not been a party to the adoption proceeding. The appellate court subsequently granted the county's request to file a special and limited appearance, but denied its motion to vacate the payment order. Following Wilhelmi's filing of a petition for a rule to show cause against the county treasurer for failure to pay the ordered amount, the appellate court, on September 8, 2000, granted a stay so that the county could seek further review of the payment order by this court.

On that same date, the appellate court filed its opinion in the underlying case, in which it held on equal protection grounds that an indigent parent facing involuntary termination of parental rights in a proceeding under the Adoption Act (750 ILCS 50/1 *et seq.* (West 1998)) is entitled to the same procedural safeguards, including representation by court-appointed counsel, as a similarly situated parent in a proceeding under the Juvenile Court Act of 1987 (705 ILCS 405/1 *et seq.* (West 1998)). 316 Ill. App. 3d 110, 121-22. The appellate court explained its holding by stating:

> "Where a statute is defective on equal protection grounds because of a constitutionally underinclusive scheme, a court may extend the coverage of the statute to include those who are aggrieved by the exclusion. [Citation.] We also note that section 2.1 of the Adoption Act provides that the Adoption Act and the Juvenile Court Act should be construed in concert with one another. 750 ILCS 50/2.1 (West 1998). Accordingly, to avoid a constitutional defect, we will construe the Adoption Act as requiring the same procedural safeguards required by the Juvenile Court Act in cases where indigent parents are facing the involuntary termination of their parental rights." 316 Ill. App. 3d at 122.

The appellate court reversed and remanded the matter

to the circuit court for a new hearing, at which R.P. would be entitled to court-appointed counsel if she established her indigence. R.R.E. and T.M.D. did not seek leave to appeal that decision to this court.

We granted the county's petition for leave to appeal. 134 Ill. 2d R. 317. The issue presented is whether the appellate court's order that a county treasurer pay the fees of appellate counsel in a case brought by private parties under the Adoption Act violates the constitutional mandate of separation of powers. However, as will be explained below, that question cannot be answered without first addressing the merits of the equal protection analysis engaged in by the appellate court.

The county's separation of powers argument presents a question of law, which we will review *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). The appellate court's conclusion that the Adoption Act must be construed to provide court-appointed counsel to indigent parents "to avoid a constitutional defect" (316 Ill. App. 3d at 122) is also subject to *de novo* review. We review *de novo* any decision finding a statute unconstitutional. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). All statutes are presumed to be constitutional and, thus, the party challenging the constitutionality of the statute bears the burden of rebutting this presumption. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999). We will construe legislative acts so as to affirm their constitutionality if we can reasonably do so. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 163 (1998).

## I. BACKGROUND

R.P. is the mother of three children. R.R.E. is the father of her two daughters, K.L.P. and K.M.P. Several years prior to the proceedings at issue here, the State removed R.P.'s three children from her custody and placed the girls with their father and his wife, T.M.D.

The girls' half brother was placed in the care of R.P.'s mother.

During these earlier proceedings, the circuit court, pursuant to section 1—5(1) of the Juvenile Court Act (705 ILCS 405/1—5(1) (West 1998)), appointed the public defender to represent R.P., who was unable to employ counsel because she lacked the financial means to do so. On two separate occasions, the court entered orders authorizing the state to file a petition to terminate R.P.'s parental rights. The Kendall County State's Attorney subsequently filed a petition to terminate R.P.'s parental rights to her son. However, no petition was filed regarding the girls. After holding a hearing on the custody, visitation, and guardianship of the two girls, the court entered an order on September 9, 1998, awarding custody and guardianship to their father and stepmother, and referring any motions or requests for visitation to the family court. Further, the court ordered these two cases dismissed and the files terminated.

On April 6, 1999, R.R.E. and T.M.D. filed adoption petitions in the circuit court of Kendall County, pursuant to the Adoption Act (750 ILCS 50/5(C) (West 1998) (petition to adopt a related child)). The petitions alleged that R.P. was an unfit parent under several of the definitions of unfitness contained in the Act (750 ILCS 50/1(D)(b), (D)(d), (D)(e), (D)(f), (D)(g), (D)(m) (West 1998)) and sought termination of her parental rights so that the girls could be adopted by their stepmother.

R.P., who had received the assistance of counsel in the earlier juvenile court proceedings, again requested that the court appoint counsel for her. The court denied her request but gave her additional time to employ counsel. At the next court date, she informed the court that she could not afford to hire an attorney and that she had been rejected as a client by the local legal services agency. The trial court again refused her request to appoint counsel and set the matter for hearing.

R.P. appeared *pro se* at the fitness hearing. She testified on her own behalf, but did not call any witnesses. The court found her unfit. At the best interests hearing, R.P. neither testified nor called any witnesses. At the conclusion of the hearing and later in its written order, the court stated that the allegations of unfitness had been proved and that it was in the best interests of the children that the petition for adoption be granted.

Following R.P.'s filing of a timely notice of appeal, the appellate court, on its own motion, appointed attorney Anna M. Wilhelmi to represent her. The appellate court denied R.R.E. and T.M.D.'s motion to reconsider this decision.

On the merits, R.P. argued on appeal that the circuit court's refusal to appoint an attorney for her in the adoption proceeding violated the constitutional guarantees of due process and equal protection because she would have been entitled to court-appointed counsel had the proceedings continued under the Juvenile Court Act. The appellate court agreed, holding that to avoid a constitutional defect, the Adoption Act must be construed to require the same procedural safeguards, including the right to counsel, as the Juvenile Court Act. 316 Ill. App. 3d at 122.

## II. ANALYSIS

### A. Procedural Setting

Our task is complicated by the unusual procedural posture of this case. The named parties are the natural mother, on one side, and the natural father and his wife, on the other. The real parties in interest, at least with regard to the issue on appeal, are Wilhelmi, who wishes to be paid for her successful representation of her client, and the county, which disputes its obligation to pay. These two parties, in their briefs and at oral argument, have argued entirely different issues to this court. The

county argues that it cannot be compelled to pay Wilhelmi's fees because the payment order violates the doctrine of separation of powers. Wilhelmi argues that equal protection requires all indigent respondent parents be provided with assistance of court-appointed counsel in proceedings to terminate parental rights, whether the petition is filed under the Adoption Act or the Juvenile Court Act. In the end, the parties have not directly engaged each other's arguments. Nevertheless, the record and the thorough opinion of the appellate court are sufficient for our determination of the issues.

B. Separation of Powers

The county, as appellant, has framed the issue in this appeal as one of separation of powers. The county describes itself as a "stranger" to the adoption proceedings and questions "whether county monies may properly be disbursed to counsel for one of the parties in what essentially is a private civil action." In addition, the county is concerned about the holding in the underlying case, which "would suggest that the county now has the obligation to provide legal representation to all indigent litigants in all termination cases, regardless of how they commence." Thus, the county characterizes the order of the appellate court as *"ultra vires"* and as a violation of the separation of powers provision of the Illinois Constitution.

Article II, section 1, of the Illinois Constitution states: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. "The purpose of this doctrine is to insure that each of the three branches of government retains its own sphere of authority, free from undue encroachment by the other branches." *People v. Izzo*, 195 Ill. 2d 109, 116 (2001). Although some slight overlap among the three functions is inevitable, such overlap does not necessarily create

encroachment of constitutional dimension. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411 (1997).

Thus, when a circuit clerk, an officer of the judicial branch, challenged state statutes and county ordinances that required her to obtain approval from the executive branch of county government prior to making expenditures for computers and software for the circuit clerk's office, this court held that separation of powers was not violated. *Pucinski v. County of Cook*, 192 Ill. 2d 540, 547-48 (2000). We concluded that "[a]s long as spending decisions by the counties do not imperil the operation of the courts, separation of powers principles do not warrant intervention by the court." *Pucinski*, 192 Ill. 2d at 548.

The present case involves a factually opposite situation. Here, an order of the appellate court requires a county treasurer to disburse county funds where the expenditure was neither anticipated or budgeted by the executive branch nor authorized by the legislative branch of county government. The county argues that only the state legislature, not the judicial branch, is constitutionally empowered to order its treasurer to make such payments.

None of the cases cited by the county in support of its separation of powers argument involve a court ordering an agency of the executive branch to expend funds for a particular purpose not required by statute. Our own research reveals the case of *In re Peak*, 59 Ill. App. 3d 548, 552 (1978), in which the appellate court held that, in the absence of statutory authority, the juvenile court could not order that a minor be treated at a private psychiatric hospital or that the Department of Mental Health and Developmental Disabilities pay for such care. "The circuit court may not exceed its statutory authority no matter how desirable or beneficial the attempted innovation might be." *Peak*, 59 Ill. App. 3d at 551-52.

However, the judicial branch may, indeed must, intervene in matters generally reserved to the other branches of state government when an action of the executive or legislative branches offends the Illinois or United States Constitutions. Thus, in *People v. Stinger*, 22 Ill. App. 3d 371, 374 (1974), a case cited by the county, the appellate court held that the circuit court did not have the authority to order the State's Attorney to have a court reporter transcribe testimony before a grand jury at county expense. As *Stinger* noted, there was no requirement, "constitutional or otherwise," that the testimony of witnesses before a grand jury be recorded. *Stinger*, 22 Ill. App. 3d at 372. By implication, if recording such testimony were mandated by the constitution or by statute, the trial court's order would not have unduly encroached upon the powers of the executive branch. The cases cited by the county in support of its separation of powers argument do not address the circumstance in which an action is constitutionally mandated. Yet, this is precisely the claim advanced by Wilhelmi on behalf of her client and, by extension, to justify her fees.

Constitutionally based judicial decisions often impose a financial burden on other branches or agencies of government. For example, in *Little v. Streater*, 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (1981), the Supreme Court considered the constitutionality of a Connecticut statute governing paternity actions that required the party requesting paternity tests to bear the costs of such tests. The Court held, on due process grounds, that given the interests at stake, the indigent putative father was entitled to a paternity test at state expense. *Little*, 452 U.S. at 9-12, 68 L. Ed. 2d at 634-36, 101 S. Ct. at 2207-09. The Court noted that " 'a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard.' " *Little*, 452 U.S. at 16, 68 L. Ed. 2d at 639, 101 S. Ct. at

2211, quoting *Boddie v. Connecticut*, 401 U.S. 371, 380, 28 L. Ed. 2d 113, 120, 91 S. Ct. 780, 787 (1971) (holding that due process prohibits a state from denying indigent parties access to its divorce court based on their inability to pay filing fees and costs). Key in *Little* and *Boddie* were the " 'fundamental' character" and constitutional significance of the private interests at stake and the fact that the parties had "no choice of an alternative forum" to resolve their dispute. *Little*, 452 U.S. at 16 n.12, 68 L. Ed. 2d at 638 n.12, 101 S. Ct. at 2210 n.12.

Because, as in *Little* and *Boddie*, the result that we reach below is constitutionally mandated, the incidental effect it may have on the fisc of Kendall County does not violate the separation of powers clause of the Illinois Constitution.

## C. A Parent's Right to Counsel

Any discussion of the right of a parent facing termination of parental rights to the assistance of counsel must begin with the United States Supreme Court decision in *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981), which was announced the same day as the decision in *Little*. After seeking and obtaining an adjudication of neglect of Abby Lassiter's minor child, the North Carolina Department of Social Services petitioned to terminate her parental rights. In the year that had elapsed between the adjudication of neglect and the filing of the petition, Lassiter was convicted of second degree murder and sentenced to a term of 25 to 40 years' imprisonment. *Lassiter*, 452 U.S. at 20, 68 L. Ed. 2d at 645, 101 S. Ct. at 2156. She was served with summons, but took no action in the termination case, although she discussed it with the attorney who was handling her criminal appeal. She requested that counsel be appointed to represent her in the termination proceeding, but her request was denied by the trial court. *Lassiter*, 452 U.S. at 21-22, 68 L. Ed. 2d at 646, 101 S. Ct. at 2157.

Reasoning that it is a "defendant's interest in personal freedom" that "triggers the right to appointed counsel" (*Lassiter*, 452 U.S. at 25, 68 L. Ed. 2d at 648, 101 S. Ct. at 2158), the Court explained that, in civil cases, where the concern is a matter of fourteenth amendment due process, rather than sixth amendment right to counsel, "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter*, 452 U.S. at 26, 68 L. Ed. 2d at 649, 101 S. Ct. at 2159. The Court then applied the three elements from *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), that must be weighed against the presumption that there is no right to appointed counsel unless there is a risk of loss of liberty: "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter*, 452 U.S. at 27, 68 L. Ed. 2d at 649, 101 S. Ct. at 2159.

The Court concluded that, despite the importance of parental rights, consideration of these three factors would not always rebut the presumption that the Constitution mandates court-appointed counsel only for indigent criminal defendants facing a jail sentence. *Lassiter*, 452 U.S. at 31, 68 L. Ed. 2d at 652, 101 S. Ct. at 2161. Indeed, the Court concluded that on the facts of this case, Abby Lassiter was not entitled to court-appointed counsel. *Lassiter*, 452 U.S. at 33, 68 L. Ed. 2d at 653, 101 S. Ct. at 2163.

Thus, under *Lassiter* and the due process clause of the fourteenth amendment, an indigent parent does not necessarily have a right to court-appointed counsel in a termination proceeding brought by the State; rather, "the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the trial court, subject, of course, to appellate review." *Lassiter*, 452 U.S. at 32, 68 L. Ed. 2d at 652, 101 S. Ct. at 2162.

When the Illinois legislature enacted the Juvenile Court Act of 1987, it provided that the parent of a minor who is the subject of proceedings under the Act will be provided with the assistance of court-appointed counsel if the parent is financially unable to employ counsel. 705 ILCS 405/1—5 (West 1998). Thus, an indigent parent in a termination proceeding brought under the Juvenile Court Act is entitled to court-appointed counsel, not because the due process clause of the Illinois or United States Constitutions mandates it, but because the legislature has chosen to guarantee the assistance of counsel to indigent parents rather than requiring courts to engage in the case-by-case determination permitted under *Lassiter*.

The Supreme Court subsequently decided a case that is factually and procedurally more similar to the present case. In *M.L.B. v. S.L.J.*, 519 U.S. 102, 136 L. Ed. 2d 473, 117 S. Ct. 555 (1996), the father and stepmother filed their adoption petition in the chancery court of the State of Mississippi, seeking to terminate the parental rights of the natural mother. After the adoption was granted, the mother filed a timely notice of appeal, but was unable to proceed with her appeal because a state statute conditioned the right to appeal in civil cases on prepayment of costs, including the cost of preparation of a trial transcript. The state supreme court denied her application to proceed *in forma pauperis* and dismissed her appeal. *M.L.B.*, 519 U.S. at 107-09, 136 L. Ed. 2d at 482-83, 117 S. Ct. at 559-60.

After tracing the history of its decisions regarding access to judicial process, the Court summarized:

"In States providing criminal appeals, *** an indigent's access to appeal, through a transcript of relevant trial proceedings, is secure under our precedent. [Citation.] That equal access right holds for petty offenses as well as for felonies. But counsel at state expense, we have held, is a constitutional requirement, even in the first instance, only

when the defendant faces time in confinement. [Citation.] When deprivation of parental status is at stake, however, counsel is sometimes part of the process that is due. [Citation.] It would be anomalous to recognize a right to a transcript needed to appeal a misdemeanor conviction— though trial counsel may be flatly denied—but hold, at the same time, that a transcript need not be prepared for M.L.B.—though were her defense sufficiently complex, state-paid counsel, as *Lassiter* instructs, would be designated for her." *M.L.B.*, 519 U.S. at 123, 136 L. Ed. 2d at 492, 117 S. Ct. at 567.

The Court based its reasoning, in part, on *Lassiter*, but also clearly distinguished between an indigent parent's right to access to the appellate process from her right to counsel at state expense. *M.L.B.*, 519 U.S. at 112-13, 136 L. Ed. 2d at 485, 117 S. Ct. at 562. Thus, although an indigent appellant parent cannot be denied a transcript with which to pursue an appeal as of right, she is not necessarily entitled to court-appointed counsel to assist her. The former is governed by the equal protection decision of *M.L.B.*; the latter by the due process decision in *Lassiter*.

On this issue, the county relies on *Rosewell v. Hanrahan*, 168 Ill. App. 3d 329 (1988), a decision of the appellate court that postdates *Lassiter* but predates *M.L.B.* The minor child had resided with his maternal grandparents for over five years when the grandparents filed a petition under the Adoption Act. The trial court appointed private counsel to represent the respondent mother, who initially appeared *pro se*. During the trial, the parties reached an agreement and the petition was withdrawn in favor of entry of an agreed order. *Rosewell*, 168 Ill. App. 3d at 330. Counsel subsequently filed a petition for fees, which was granted by the trial court. The Cook County treasurer then filed a motion to vacate the payment order. The trial court denied the motion, finding that due process required the appointment of counsel. *Rosewell*, 168 Ill. App. 3d at 331.

The appellate court noted that the single provision of the Adoption Act that allows for the appointment of counsel for the respondent parent applies only if the alleged parental unfitness is due to physical or mental illness (see 750 ILCS 50/13(B)(c) (West 1998)). *Rosewell*, 168 Ill. App. 3d at 331. The appellate court further found that it was not required to engage in the three-factor analysis set out in *Lassiter*, because a case brought by a private party under the Adoption Act does not involve state action:

> "There is no indication that the State or any of its agencies participated in the proceedings or sought to encourage the filing of the petition or subsequent order of permanent custody. The mere fact that there is a statute which allows for individuals to bring private adoption proceedings does not of itself turn this action into 'State' action." *Rosewell*, 168 Ill. App. 3d at 332.

Based on this reasoning, the county asserts R.P. was not entitled to the assistance of court-appointed counsel, even if she had demonstrated indigence, because the petition was brought by private parties under the Adoption Act.

The county distinguishes an earlier case, *In re Adoption of Sotelo*, 130 Ill. App. 3d 398 (1985), which held that although the Adoption Act contains no statutory requirement of representation by counsel, the respondent mother was entitled to court-appointed counsel. The county correctly notes that *Sotelo* was neither an equal protection nor a due process decision and can, therefore, be limited to its unusual factual situation—proceedings were brought concurrently under both the Juvenile Court Act and the Adoption Act and the appellate court found it impossible to determine which statute the trial court was applying and what grounds the court used to determine unfitness. *Sotelo*, 130 Ill. App. 3d at 401.

The county urges this court to adopt a bright-line rule—proceedings under the Adoption Act do not involve

state action and, therefore, no right to counsel exists, with the exception of that provided in a single, narrow, statutory provision that is not applicable in the present case. See 750 ILCS 50/13(B)(c) (West 1998).

Wilhelmi, on the other hand, would have this court read *Lassiter* and *M.L.B.*, together, as creating an equal protection right to counsel for indigent parents, whether their parental rights are at stake in a proceeding under the Juvenile Court Act or under the Adoption Act. She asserts that the use of the judicial system to terminate parental rights is, by definition, state action no matter who initiated the petition or which statute governs. The only authority she cites for this sweeping proposition is the fundamental nature of the rights of parents and the "final, irrevocable, and gravely permanent" effect of their termination.

There is, however, some precedent for viewing the utilization of the judicial process by a private party to affect the constitutional rights of another as "state action." In *Shelley v. Kraemer*, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836 (1948), the Court held that use of the state's judicial process to enforce a racially restrictive covenant was state action violating the equal protection clause of the fourteenth amendment: "It is clear that but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint." *Shelley*, 334 U.S. at 19, 92 L. Ed. at 1183, 68 S. Ct. at 845.

Almost two decades after deciding *Shelley*, the Court used the same reasoning to hold that a state constitutional amendment guaranteeing property owners the absolute discretion to decline to sell or rent their property violated the equal protection clause. *Reitman v. Mulkey*, 387 U.S. 369, 381, 18 L. Ed. 2d 830, 838, 87 S. Ct. 1627, 1634 (1967). Using the power of the court to

encourage or enforce racial discrimination, under this view, is state action that violates equal protection.

In the adoption context, the claim of state action when the court system is utilized to terminate parental rights is, perhaps, even stronger than in *Shelley*. Adoption exists only as a creature of statute. *In re M.M.*, 156 Ill. 2d 53, 62 (1993). Prospective adoptive parents cannot achieve their goal of parenthood by contract or other private means; they must involve the court.

In other contexts, however, this court has repeatedly expressed reluctance to base a finding of state action on the mere fact that a state court is the forum for the dispute. See *People v. Brown*, 169 Ill. 2d 94, 107 (1995); *People v. DiGuida*, 152 Ill. 2d 104, 125 (1992); see also L. Tribe, American Constitutional Law 1698 (1988) ("To contemporary commentators, however, *Shelley* and *Reitman* appear as highly controversial decisions. In neither case, a commonly voiced view has it, is the Court's finding of state action supported by any reasoning which would suggest that 'state action' is a meaningful requirement rather than a nearly empty or at least extraordinarily malleable formality").

We need not resolve the question whether every case brought under the Adoption Act implicates "state action," for *Shelley* and its progeny need not be invoked to find the state action in this case. The State filed the initial petition under the Juvenile Court Act, seeking adjudication of the minor children as neglected. R.P.'s right to counsel in that matter was guaranteed by statute. 705 ILCS 405/1—5(1) (West 1998). The girls were placed in the custody of their father and stepmother as a direct result of this state action. The adoption petition, although filed by private parties, essentially took the place of the petition to terminate parental rights that the State was authorized, but declined, to file. Thus, this case is clearly distinguishable from *Rosewell*, which

involved a purely private adoption. As the appellate court noted:

"Under these circumstances, the specter could be raised that the state intentionally chose to forego prosecution of a termination of parental rights petition, knowing that the accomplishment of its goal could be reached with greater ease and less expense without its involvement in a proceeding to terminate parental rights if the respondent could be denied the benefit of court-appointed counsel." 316 Ill. App. 3d at 119.

Because of this procedural history, the equal protection question posed by this case is not whether an indigent respondent parent may be treated differently depending on whether termination of parental rights is sought by the State or by prospective adoptive parents. The equal protection question posed by this case is whether an indigent respondent parent may be treated differently depending on whether termination of her rights is sought by the State or by the person who obtained custody or guardianship of the child as a result of state action. Having precisely defined the categories to which equal protection analysis must be applied, we now turn to the constitutional question.

Equal protection analysis is identical under the United States and Illinois Constitutions. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322 (1996). The essential test of equal protection is whether government deals with similarly situated individuals in a similar manner. *Jacobson*, 171 Ill. 2d at 322. In reviewing a claim that the guarantee of equal protection has been violated, the court applies strict scrutiny to classifications of individuals that affect fundamental rights. *Jacobson*, 171 Ill. 2d at 323. A parent's interest in maintaining a parental relationship with her child is clearly a fundamental liberty interest, protected by the equal protection provisions of both the state and federal constitutions. *Santosky v. Kramer*, 455 U.S. 745, 753, 71

L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394-95 (1982); *R.C.*, 195 Ill. 2d at 301-02. We, therefore, will apply a strict scrutiny analysis to determine whether providing counsel to indigent respondent parents in cases carried to conclusion under the Juvenile Court Act but denying counsel to indigent respondent parents in cases dismissed after guardianship or custody has been awarded to prospective adoptive parents, who thereafter file their own adoption petitions, violates constitutional guarantees of equal protection. Such a classification will survive strict scrutiny only if necessary to promote a compelling state interest and narrowly tailored to serve that interest. *People v. Shephard*, 152 Ill. 2d 489, 500 (1992).

By statute, the respondent parent's right to counsel attaches when the State files an action under the Juvenile Court Act. 705 ILCS 405/1—5 (West 1998). The people of the State of Illinois are the real party in interest in such a proceeding (*In re J.J.*, 142 Ill. 2d 1, 6 (1991), citing *People v. Piccolo*, 275 Ill. 453, 455 (1916)), and are represented by the State's Attorney (705 ILCS 405/1—6 (West 1998)). Section 2—28 of the Juvenile Court Act requires the circuit court to conduct a permanency hearing within 12 months of the entry of a temporary custody order and at least every six months thereafter. 705 ILCS 405/2—28(2) (West 1998). At the permanency hearing, the circuit court determines the status of the child by selecting a permanency goal from among those listed in the statute. 705 ILCS 405/2—28(2) (West 1998). The circuit court then enters an order setting forth the "future status of the minor, including the permanency goal, and any order necessary to conform the minor's legal custody and status to such determination." 705 ILCS 405/2—28(3)(a) (West 1998).

All of these provisions were followed in this case and after many months and numerous hearings, the circuit court authorized the State to file a petition to terminate

R.P.'s parental rights "within 30 days." Two and one-half months later, when no petition had been filed, the circuit court granted the State leave to file a petition to terminate "instanter." The State did file a petition with regard to R.P.'s son, but did not file petitions to terminate her rights to her daughters. Instead, the State scheduled the matter for a hearing on custody and guardianship. Once these issues were resolved in favor of the father and stepmother, the matter was dismissed. The record does not reveal whether the State sought the dismissal (there is no written motion for dismissal), but clearly the State did not seek to keep these files active. Neither did R.R.E. and T.M.P., who did not file a petition to terminate R.P.'s parental rights under the Juvenile Court Act, although the statute would have permitted them to do so. 705 ILCS 405/2—13(1) (West 1998) (providing that "any adult person" may initiate a petition). Of course, had they done so, R.P. would have been entitled to the assistance of court-appointed counsel. Instead, as a result of the custody order and the dismissal, R.P. was left to attempt to obtain visitation in family court, without the assistance of counsel; R.R.E. and T.M.P. were free to seek termination of her parental rights by means of an adoption petition, with the knowledge that R.P. would not have the assistance of the public defender; and the county was spared the additional expense of providing counsel for R.P. and of prosecuting the case.

Thus, dismissing a case initially brought under the Juvenile Court Act so that the prospective adoptive parents may file a petition under the Adoption Act saves the State the cost of providing counsel for the indigent parent and the services of the State's Attorney to prosecute the case. This cannot be deemed a compelling state interest. Indeed, these expenses are anticipated by the county at the time the original juvenile court action is brought. As the appellate court so aptly noted:

"The state undoubtedly has a legitimate pecuniary interest in providing counsel in as limited a number of cases as possible. However, it cannot be said that the state's interest is significant enough to overcome a parent's 'commanding' interest in the 'accuracy and justice of the decision to terminate his or her parental status.' " 316 Ill. App. 3d at 122, quoting *Lassiter*, 452 U.S. at 27, 68 L. Ed. 2d at 650, 101 S. Ct. at 2160.

We, therefore, hold that where, as here, significant state action has resulted in the custody or guardianship of the minor child being placed with a person other than the parent, equal protection requires that the parent be provided with the assistance of counsel, if she is indigent, in a subsequent action to terminate her parental rights, whether that action is brought pursuant to the Juvenile Court Act or by the child's guardian or custodian pursuant to the Adoption Act.

We need not decide the equal protection issue in the case that arises between private individuals and is litigated entirely under the Adoption Act. That question is best left to the legislature or to be fully briefed and argued by the parties when and if such a case arises. The appellate court's conclusion that the Adoption Act creates a constitutionally underinclusive scheme and must be construed to require the assistance of counsel in all cases is, if not in error, at least premature.

D. Right to Counsel on Appeal

Having concluded that R.P., assuming she is indigent, should have been provided with the services of court-appointed counsel before the circuit court, we must next address the issue posed by this appeal, whether the county must pay the fees of the attorney appointed by the appellate court to represent her on appeal. The answer to that question depends on whether an indigent respondent parent has the right to counsel on appeal when her parental rights have been terminated in an action brought by the State under the Juvenile Court Act.

That question was answered in the affirmative by *In re Harrison*, 120 Ill. App. 3d 108 (1983). The Harrison children were adjudicated neglected in a proceeding brought by the State under the Juvenile Court Act. The mother was represented by court-appointed counsel throughout the proceedings and the State's petitions to terminate her parental rights were denied. The State then appealed. The attorney who had represented the mother sought to be appointed her counsel on appeal. His motion was denied by the trial court, so he filed a motion with the appellate court. The appellate court took the motion with the case and, in the end, allowed the motion and affirmed the order of the trial court. *Harrison*, 120 Ill. App. 3d at 109.

On the issue of the right to appellate counsel, the appellate court rejected the respondent mother's constitutional equal protection and due process arguments. Finding *Lassiter* inapposite, because it did not mandate counsel in all cases, the appellate court declined to engage in the three-part *Mathews v. Eldridge* analysis, but did find a statutory basis for the appointment of appellate counsel. *Harrison*, 120 Ill. App. 3d at 110.

Reading the section of the Juvenile Court Act that provides for the appointment of counsel at the trial court level (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(1), subsequently amended and codified at 705 ILCS 405/1—5(1) (West 1998)), together with the section guaranteeing the right to appeal (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(3), now codified at 705 ILCS 405/1—5(3) (West 1998)), the appellate court held: "It is totally inconsistent with the purpose and policy of the Juvenile Court Act *** to deny the natural parents who are indigent the right to counsel on appeal." *Harrison*, 120 Ill. App. 3d at 113.

The court found support for this conclusion in the decisions of other states. For example, the Supreme Court of Iowa had held that the right-to-appeal provision in its

juvenile court act " 'was not intended to be limited to those cases in which the minor child or his parents were financially able to afford such appeal.' " *Harrison*, 120 Ill. App. 3d at 112-13, quoting *In re Chambers*, 261 Iowa 31, 35, 152 N.W.2d 818, 821 (1967). We agree with the holding in *Harrison*, which has been the unquestioned rule in Illinois for many years.

In summary, R.P., as an indigent respondent parent, should have been given assistance of court-appointed counsel in the underlying case because the initial state action requires that the subsequent adoption proceeding be conducted with the same procedural safeguards that would have been provided if the petition to terminate her parental rights had been brought under the Juvenile Court Act. If that had been the case, she would also have been entitled to court-appointed appellate counsel.

Indeed, the county does not dispute that, had the termination proceeding continued under the Juvenile Court Act, R.P. would have been entitled to the services of an attorney from the Kendall County public defender's office and, had her rights been terminated in that proceeding, to the services of court-appointed appellate counsel. It is the unusual procedural posture of this case that the county finds unsatisfying. The county has been ordered to pay an expense it did not elect to incur and did not anticipate. The county's concern for fiscal responsibility is both understandable and commendable. However, the result in this case is mandated by the Illinois and United States Constitutions and by long-standing judicial interpretation of the Juvenile Court Act.

## III. CONCLUSION

For the foregoing reasons, the order of the appellate court that the county treasurer of Kendall County pay

Anna Wilhelmi $3,847.55 in reasonable attorney fees is hereby affirmed.

*Affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

I agree with the majority in all respects save the reasoning employed to arrive at the conclusion that the adoption action was "state action."

The majority adequately sets out the pertinent facts. The State did prosecute an action under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994)) to remove the children from their mother's custody. That action preceded the instant adoption action. The majority relies heavily on this fact, framing the issue as

"not whether an indigent respondent parent may be treated differently depending on whether termination of parental rights is sought by the State or by prospective adoptive parents[; rather, the issue is] whether an indigent respondent parent may be treated differently depending on whether termination of her rights is sought by the State or by the person who obtained custody or guardianship of the child as a result of state action." 198 Ill. 2d at 466.

The majority does not explain its reliance on this distinction, however, and I do not believe that it forms a proper basis for the majority's conclusion that there was "state action" in the adoption action. It would overstate matters to say that the custody proceeding and the adoption action were entirely unrelated, but they are not the same action, nor is the adoption action properly characterized as a continuation of the juvenile court action. The juvenile court action was not a necessary precursor to the adoption action. A person need not have custody or guardianship in order to file an adoption action in which parental rights are sought to be terminated. See 750 ILCS 50/1(F)(b) (West 1994) (among persons "available

for adoption" are children "to whose adoption no consent is required pursuant to Section 8 of [the Adoption] Act" (referring to 750 ILCS 50/8, which notes that consents or surrenders are not required of parents found to be an unfit person)); 750 ILCS 50/2 (West 1994) (no requirement that a party have custody or guardianship in order to file adoption action). Nor am I aware of any legal effect which the court hearing the adoption action must accord to any previous order of custody or guardianship. The fact that children may have been removed from a parent's custody is legally irrelevant to the question of whether his or her parental rights should be terminated in a subsequent adoption action.

The only basis offered by the majority for its linkage of the juvenile court action and the adoption action is its speculation that the State and the father colluded to deprive the mother of counsel in order to save the State money. 198 Ill. 2d at 466, 468-69. I find this quite unsettling. First, it is merely speculation. There could be any number of reasons for the State not instituting a proceeding to terminate parental rights, and there are also a number of non-nefarious reasons why prospective adoptive parents might wish to proceed with an adoption action themselves, with counsel of their choosing, rather than hanging their hopes on the State's prosecution of a termination action under the Juvenile Court Act. I believe it is improper to ascribe such callow motives to the office of the State's Attorney and the children's father. Moreover, I do not see how this speculation can form the basis for linking the juvenile court action and the adoption action. Indeed, the Supreme Court has stated that the motives of the State are beside the point: "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991,

1004-05, 73 L. Ed. 2d 534, 547, 102 S. Ct. 2777, 2786 (1982).

In the final analysis, I agree with the majority that the adoption action, involving termination of parental rights, does constitute state action. However, we may reach this conclusion without blurring the lines between a custody action and an adoption action or imputing base motives to the State and the children's father. Regardless of motivations, state action may be found where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.' " *Blum*, 457 U.S. at 1005, 73 L. Ed. 2d at 547, 102 S. Ct. at 2786, quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 42 L. Ed. 2d 477, 485, 95 S. Ct. 449, 455 (1974). I would submit that the instant case falls squarely within this category. Clearly, individuals traditionally had no power to terminate other persons' parental rights. Rather, this power was traditionally reserved to the state. I would find that the adoption action constituted state action for this reason, rather than because of the " 'specter' " (198 Ill. 2d at 466, quoting 316 Ill. App. 3d at 119) that the office of the State's Attorney knowingly conspired with the children's father to deprive the mother of counsel in an action to terminate her parental rights, in order to save the State money.