2022 IL App (1st) 210791-U
No. 1-21-0791
June 21, 2022

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| IN RE THE ADOPTION OF | ) | Appeal from the |
| | ) | Circuit Court of |
| P.Y.Y.Y. | ) | Cook County. |
| | ) | |
| BRETT RANJEL, Appellant, | ) | |
| | ) | No. 2002 D 10403 |
| v. | ) | |
| | ) | Honorable |
| HUSBAND and WIFE, | ) | LaGuina Clay-Herron, |
| | ) | Judge presiding. |
| Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

*Held*:  Where a putative father failed to file a parentage petition within 30 days of registering as a putative father, and he met none of the other criteria of section 8(b)(1)(B) of the Adoption Act, the mother's consent alone validated the adoption, and the putative father had no standing to object to the adoption.

¶ 1 The trial court found that P.Y.Y.Y.'s biological father, Brett Ranjel, lacked standing to object to a petition for adoption of P.Y.Y.Y. because Ranjel failed to file a parentage petition within 30 days of registering as P.Y.Y.Y.'s putative father. Ranjel contends the Adoption Act (Act) (750 ILCS 50/0.01 *et seq.* (West 2020)) makes his consent to the adoption indispensable. We find the trial court correctly interpreted section 8(b)(1) of the Act, which makes the mother's consent to the adoption, without the father's consent, sufficient to support the adoption when the father does not meet any of the criteria listed in section 8(b)(1)(B).

¶ 2 I. BACKGROUND

¶ 3 In April 2020, Anna Yordy told Ranjel that he had impregnated her. She stated that the baby might be placed for adoption. Yordy worked with an adoption counselor from September through December 2020. The counselor called Ranjel in October 2020. Ranjel told the counselor he did not consent to the adoption. In November 2020, Ranjel registered with the Illinois Putative Father Registry. The form he filled out stated:

"I understand that filing with the Putative Father Registry is only the first step in protecting my interests in being considered the legal father of the child and that I will have the right to object to an adoption only if I start legal proceedings to establish that I am the father. It is called a parentage action and must be completed wit[hi]n 30 days of the date of my registration with the Putative Father Registry. For assistance with starting a parentage action, I must contact the Illinois Department of Public Aid."

¶ 4 Yordy gave birth to P.Y.Y.Y. on December 2, 2020, and she signed a consent to adoption on December 22, 2020. On January 11, 2021, Petitioners, a couple who seek anonymity in this appeal, filed in Cook County a petition to adopt P.Y.Y.Y. They served Ranjel with the adoption

petition on January 21, 2021, and on February 3, 2021, Ranjel filed a parentage petition. He filed the petition in Whiteside County, where he and Yordy lived. The Whiteside court entered an order naming Ranjel as P.Y.Y.Y.'s father.

¶ 5    In the adoption case, Ranjel then filed a motion to change the venue to Whiteside County. The Cook County court denied the motion, and petitioners filed a motion asking the court to find that Ranjel had no standing to object to the adoption.

¶ 6    The Cook County court heard Petitioners' motion challenging Ranjel's standing in May 2021. The adoption counselor testified about her work on the case, and Ranjel testified about his objection to the adoption. Ranjel admitted that he did not file a parentage action within 30 days of adding his name to the Illinois Putative Father Registry. He explained that he tried to hire an attorney to help him with the filing, but he could not afford the retainer the attorney sought. He showed the court a letter he sent to several relatives and friends, seeking funds to pay for an attorney.

¶ 7    The trial court held Ranjel lacked standing to object to the adoption. Ranjel now appeals. Because the trial court's order effectively extinguishes Ranjel's interest in the adoption, we have jurisdiction over the appeal. Ill. S. Ct. R. 307(a)(6) (eff. Nov. 1, 2017).

¶ 8                                II. ANALYSIS

¶ 9    On appeal, Ranjel contends that the Act makes his consent a prerequisite for the adoption of P.Y.Y.Y. He also argues the trial court's order deprives him of due process and equal protection. Because the case turns on the interpretation of a statute, we review the trial court's ruling *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. The parties agree that the adoption in this case requires consent. We decide

only whether the mother's consent alone suffices for the adoption. Section 8(b) of the Act provides:

"Where consents are required in the case of an adoption of a minor child, the consents of the following persons shall be sufficient: (1) (A) The mother of the minor child; and

(B) The father of the minor child, if the father:

(i) was married to the mother on the date of birth of the child

\*\*\*

(ii) is the father of the child under

\*\*\* an order of parentage \*\*\*; or

(iii) in the case of a child placed with the

adopting parents less than 6 months after birth, openly lived with the child, the child's biological mother, or both, and held himself out to be the child's biological father during the first 30 days following the birth of the child; or

\*\*\*

(vii) has timely registered with Putative

Father Registry, as provided in Section 12.1 of this Act, and prior to the expiration of 30 days from the date of such registration, commenced legal proceedings to establish paternity." 750 ILCS 50/8(b) (West 2020).

¶ 24     Ranjel admits that when Petitioners filed their adoption petition, he did not meet any of the criteria in section 8(b) to qualify as a father whose consent, along with the mother's consent,

would suffice for an adoption. Despite the warning on the form that he filed with the Illinois Putative Father Registry, Ranjel did not file a parentage action within 30 days of registering as a putative father.

¶ 25 Our supreme court stated: "a father may provide or withhold consent to the adoption if he has 'timely registered with [the] Putative Father Registry ***, and prior to the expiration of 30 days from the date of such registration, commenced legal proceedings to establish paternity.'" *J.S.A. v. M.H.*, 224 Ill. 2d 182, 201, 863 N.E.2d 236 (2007) (quoting 750 ILCS 50/8(b) (West 1998)). "[T]he statute protects those putative fathers who have taken certain specified actions to preserve their rights. [Citations.] If the putative father has not so acted within the time limits provided by statute, the child's right to a stable environment and finality becomes paramount; and the putative father loses all right to intervene in adoption proceedings." *Petition of K.J.R.*, 293 Ill. App. 3d 49, 55, 687 N.E.2d 113 (1997). A commentator explained:

"[The Act] require[es] unwed fathers to register with the state within thirty days of the child's birth in order to preserve standing for the purposes of subsequent adoption proceedings. ***

*** [T]he father's participation in the Putative Father Registry merely guarantees his right to take part in a 'best interests' hearing for the child and not to withhold consent to the adoption." Gerald Huston, *Born to Lose: The Illinois "Baby Richard" Case--How Examining His Father's Pre-Birth Conduct Might Have Led to a Different Ending for Richard*, 16 N. Ill. U. L. Rev. 543 (1996); see also Diane S. Kaplan, *The Baby Richard Amendments and the Law of Unintended Consequences*, 22 Child. Legal Rts. J. 2 (2002-03).

¶ 26 The Senate sponsor of the bill that included section 8 of the Act explained its purpose:

"[T]he intent of this bill is to provide some measure of security for adoptive parents in the State of Illinois. We would like to lay out a procedure that is predictable, that is known[.] *** [I]f these procedures are adhered to, and notices are sent, and fathers who wish to assert their rights follow the proper procedures, *** they can secure [their rights], and if they don't, their rights are terminated, and therefore, adoptive parents are secure in their relationship with *** their adopted children." 88th General Assembly, Senate Proceedings, July 1, 1994, at 8 (statement of Senator Cronin).

¶ 27    Ranjel contends that under section 8(a) of the Act he retained his right to object to the adoption, and the 30-day limit for filing parentage actions applies only if the putative father receives a section 12a notice. Section 8(a) provides:

"Except as hereinafter provided in this Section consents or surrenders shall be required in all cases, unless the person whose consent or surrender would otherwise be required shall be found by the court:

***

(3) to have waived his parental rights to the child under Section 12a or 12.1 or subsection S of Section 10 of this Act." 750 ILCS 50/8(a) (West 2020).

¶ 28    Section 12a provides that any party may serve notice of intent to adopt on a putative father. Section 12a requires that the notice must inform the putative father:

"If you wish to retain your rights with respect to the child, you must file ***, within 30 days after the date of receipt of this notice, the declaration of paternity enclosed herewith stating that you are, in fact, the father of the child and that you intend to retain your legal rights with respect to the child, or request to be notified of any

6

further proceedings with respect to custody or adoption of the child.

If you do not file such a declaration of paternity, or a request for notice, then whatever legal rights you have with respect to the child, including the right to notice of any future proceedings for the adoption of the child, may be terminated without any further notice to you. When your legal rights with respect to the child are so terminated, you will not be entitled to notice of any proceeding instituted for the adoption of the child."

¶ 29    Ranjel contends he did not waive his rights under section 12a because Petitioners never sent him a section 12a notice. They sent him only notice of the adoption proceedings, without the warning that echoes the warning he received from the Illinois Putative Fathers Registry about the termination of his parental rights.

¶ 30    We find that section 8(a) does not affect the sufficiency of the mother's consent as established by section 8(b). Section 8(b)(1) governs adoptions by consent of the parents, setting both the necessary and sufficient conditions for such adoptions. The section requires consent of the mother without qualification, but it requires consent of the father only if the father meets the requirements of section 8(b)(1)(B). Under section 8(b)(1)(B), in accord with the warning Ranjel received when he registered as a putative father, Ranjel waived his parental rights when he failed to file a parentage action within 30 days of adding his name to the registry.

¶ 31    Ranjel contends that the court's order deprives him of due process and equal protection because his lack of funds prevented him from hiring an attorney to file a timely parentage petition. "The fundamental requirements of due process are notice of the procedure and the opportunity to present any objection or rebuttal." *People v. Deleon*, 2020 IL 124744, ¶ 7. The Illinois Putative Father Registry notified Ranjel of his rights and afforded the opportunity to

take the steps necessary to protect those rights. The Constitution does not guarantee the right to litigate without expense, but simply protects individuals from the imposition of terms that unreasonably and injuriously interfere with their "right to a remedy in the law or impede the due administration of justice." *Ali v. Danaher*, 47 Ill. 2d 231, 236 (1970). The due process clause does not require the suspension of adoption proceedings for an indefinite period while the putative father gathers funds to retain counsel. We find no violation of Ranjel's right to due process.

¶ 32      "The essential test of equal protection is whether government deals with similarly situated individuals in a similar manner." *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 466, 763 N.E.2d 741, 752 (2002). Ranjel does not make explicit his argument as to how the Act impermissibly classifies litigants and deprives his class of equal protection. The Act requires all putative fathers to file parentage actions within 30 days of adding their names to the registry if they seek to protect their right to object to adoption. All putative fathers, regardless of income or wealth, waive their rights if they fail to file parentage actions within the statutory 30-day period. We find no classification that violates Ranjel's right to equal protection of the law.

¶ 33                                  III. CONCLUSION

¶ 34      The trial court correctly held that Ranjel lacked standing because he waived his right to object to the adoption when he failed to file a parentage action within 30 days after registering with the Illinois Putative Fathers Registry. Accordingly, we affirm the trial court's judgment.

¶ 35      Affirmed.