NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250983-U

NO. 4-25-0983

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 20, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* X.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | No. 23JA15 |
| v. | ) | |
| Brianna C., | ) | Honorable |
| Respondent-Appellant). | ) | Chad M. Long, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment, concluding no issue of arguable merit could be raised on
appeal.

¶ 2     On September 2, 2025, the trial court entered an order terminating the parental

rights of respondent, Brianna C., to her minor child, X.H. (born November 2018). Respondent

appealed, and counsel was appointed to represent her. Appellate counsel now moves to withdraw,

citing *Anders v. California*, 386 U.S. 738 (1967), on the basis that she cannot raise any potentially

meritorious argument on appeal. The record indicates a copy of counsel's motion and

accompanying memorandum of law were sent to respondent by mail. Respondent filed a response.

After reviewing the record, counsel's memorandum, and the response, we grant the motion to

withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5          On March 17, 2023, the State filed a petition for adjudication of wardship. The petition alleged X.H. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) because he was in an environment injurious to his welfare, as evidenced by respondent's mental health issues and methamphetamine usage. Following a shelter care hearing on March 20, 2023, the trial court placed temporary custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 6          On June 6, 2023, the trial court adjudicated X.H. neglected pursuant to respondent's stipulation. Following the February 1, 2024, dispositional hearing, the court made X.H. a ward of the court and continued his custody and guardianship with DCFS.

¶ 7                                    B. Termination Petition

¶ 8          On October 29, 2024, the State filed a petition to terminate respondent's parental rights. The petition alleged she was an unfit parent in that she (1) failed to make reasonable efforts to correct the conditions that caused X.H. to be removed (750 ILCS 50/1(D)(m)(i) (West 2024)), (2) failed to make reasonable progress toward the return of X.H. to her care during a nine-month period after X.H. was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2024)), and (3) failed to maintain a reasonable degree of interest, concern, or responsibility for X.H.'s welfare (750 ILCS 50/1(D)(b) (West 2024)). The relevant time period alleged by the State was January 28, 2024, to October 28, 2024.

¶ 9                                    C. Fitness Hearing

¶ 10          The trial court commenced the fitness hearing on May 29, 2025. At the outset, the

court entered a default judgment against all known and unknown fathers.

¶ 11          Stephanie Brockett testified she was X.H.'s caseworker from January 2024 until July 2024. For the remainder of the relevant time period, Brockett was X.H.'s case supervisor. During the relevant time period, respondent was required to complete mental health and substance abuse assessments, participate in random drug drops, maintain housing and income, participate in parenting classes, and participate in visitation with X.H. Respondent failed to engage in mental health services and further failed to complete a substance abuse assessment. Additionally, respondent did not complete any drug drops. Regarding visitation, Brockett indicated respondent last visited X.H. in December 2023. Respondent was also unable to obtain housing. Brockett further testified respondent "was occasionally in jail but her whereabouts when she was not in jail were not known." Respondent's communication with the agency was inconsistent, and Brockett indicated the agency had to perform "a diligent search to try and find [respondent's] whereabouts." According to Brockett, respondent was not referred for parenting classes because the agency was unable to determine respondent's sobriety. During the relevant time period, respondent did not complete any of the required services.

¶ 12          On cross-examination, Brockett indicated that in December 2023, the agency made the decision to suspend respondent's visits with X.H. Brockett described the decision as follows:

> "When [respondent] would attend visits, she wasn't able to stay the entire length of the visit. She would become dysregulated herself and then when she stopped visiting and we couldn't find her or get in contact with her, we made the decision *** given that we couldn't establish sobriety and she was so dysregulated during visits prior to them ending."

Brockett agreed that respondent "had only attended 30 percent of her visits" since the opening of

the case.

¶ 13　　　　Respondent testified she was currently incarcerated in the Knox County jail and was taking medication for her mental health issues. At the time of her testimony, respondent had "almost 90 days clean." Regarding visitation, respondent disagreed with Brockett that her last visit was in December 2023 and insisted her last visit with X.H. occurred in March 2024.

¶ 14　　　　Following arguments, the trial court found the State proved by clear and convincing evidence respondent was unfit as alleged in its petition. Specifically, the court observed, "[E]ven if I ignore any issues with visitation, *** [respondent was] incarcerated for several months during that time frame but there were months that [respondent was] not." The court then opined respondent could have participated in services during the time she was not incarcerated. Addressing the issue of visitation, the court found respondent's testimony was not credible. The court cited several inconsistencies in respondent's testimony, stating, "For example, when [respondent] was questioned about drug use during the reporting period, [respondent] said [she was] using legal cannabis. Then added a caveat that maybe [she was] using some methamphetamine during that time." The court continued, "[Respondent] didn't really visit with [X.H.] [Respondent's] last visit even with inconsistencies between [her] testimony and Ms. Brockett's, [respondent's] own statement is the last time [she] saw the child was in March 2024. Testimony was clear though that prior to that [respondent's] visits were also inconsistent." In short, the court stated respondent had not done "anything that was required of [her] family service plan" during the relevant time period.

¶ 15　　　　　　　　　　　　D. Best-Interest Hearing

¶ 16　　　　On September 2, 2025, the trial court conducted a best-interest hearing. A best-interest report was admitted without objection. The authors of the best-interest report indicated

- 4 -

X.H. had been in his current foster placement for approximately two years and his "basic health, safety, education, and well-being need [*sic*] continue to be met by his foster parent." Moreover, his foster parent was committed to providing permanency through adoption. It was the agency's opinion that termination of respondent's parental rights was in X.H.'s best interest.

¶ 17 Respondent testified she was currently incarcerated at Logan Correctional Center. She was currently seeing a psychotherapist and a counselor. Further, she was participating in an online course for incarcerated parents and had been "putting in requests weekly" to start a Narcotics Anonymous program.

¶ 18 Following argument, the trial court found termination of respondent's parental rights was in X.H.'s best interest. The court began by noting:

> "[W]hen it comes to best interests, the focus shifts to the minor child and what's best for the minor child, not necessarily what services [respondent has] done in the past three months or how [she] may have changed or what [she has] done to address issues in the past, and what I have in front of me is a child that's been in care since 2023."

Moreover, the court observed X.H. felt supported and his physical safety and welfare were being adequately provided for in his current placement. Further, X.H.'s foster parent provided stability, and X.H. had "forged bonds with his foster parent and with the foster siblings." While the court acknowledged respondent had been taking steps to "better herself," it concluded, after considering the statutory factors, it was in X.H.'s best interest that respondent's parental rights be terminated.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, appellate counsel seeks to withdraw on the basis that she cannot raise

any arguments of potential merit. In her response, respondent indicates she is "fine with [appellate counsel] withdrawing," but she adds that "since [she is] still indigent [she is] officially request[ing] the court appoint [her] new counsel." If additional counsel is appointed to her, respondent appears to request an extension of time. We note respondent does not respond substantively to appellate counsel's contentions.

¶ 22    "[A]n indigent parent in a termination proceeding brought under the Juvenile Court Act is entitled to court-appointed counsel, not because the due process clause of the Illinois or United States Constitutions mandates it, but because the legislature has chosen to guarantee the assistance of counsel to indigent parents." *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 461 (2002). Here, respondent was provided court-appointed counsel.

¶ 23    The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). According to this procedure, counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. "[C]ounsel must *** sketch the argument in support of the issues that could conceivably be raised on appeal, and then *** explain why [she] believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. In doing so, counsel should review both the unfitness finding and the best-interest determination and indicate in the brief she has done so. *S.M.*, 314 Ill. App. 3d at 685-86.

¶ 24    In the instant case, counsel asserts she has reviewed the record on appeal, including the report of proceedings of the termination hearings, and has concluded there are no appealable issues of merit. Counsel states she has considered raising an argument the trial court erred in

finding respondent unfit. She also indicates she has considered raising an argument challenging the court's best-interest finding. We address each argument in turn.

¶ 25                                    A. Unfitness Finding

¶ 26          We first address appellate counsel's assertion no meritorious argument can be made that the trial court erred in finding respondent unfit.

¶ 27          Termination of parental rights under the Juvenile Court Act is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)), a parent may be found unfit if she fails to "make reasonable progress toward the return of the child to [her care] during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2024). This court has explained reasonable progress exists when a trial court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). " 'Reasonable progress' is measured by an objective standard." *In re A.R.*, 2023 IL App (1st) 220700, ¶ 70. "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003).

¶ 28          We will not disturb a finding of unfitness unless it is against the manifest weight of

the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 29        Here, the State proved by clear and convincing evidence respondent failed to make reasonable progress during the relevant time period as alleged in the State's petition. Indeed, during that time, respondent failed to engage in mental health services and further failed to complete a substance abuse assessment. In addition, she failed to complete any drug drops and did not secure appropriate housing. Regarding respondent's communication with the agency, Brockett testified, at one point, the agency had to perform a diligent search in an attempt to "try and find [respondent's] whereabouts." According to Brockett, respondent's last visit with X.H. was in December 2023. While respondent disputed the date of her last visit with X.H., the trial court reasonably found respondent's testimony was not credible. Throughout the relevant time period, the agency was unable to determine respondent's sobriety, and indeed, respondent indicated she may "have been using meth a little bit but it was like for two months of that when [she] wasn't in jail."

¶ 30        Based on this evidence, respondent did not "substantially fulfill *** her obligations under the service plan" and therefore did not make reasonable progress toward the return of X.H. to her care. 750 ILCS 50/1(D)(m)(ii) (West 2024). Accordingly, we agree with counsel, any argument contesting the trial court's unfitness findings would be frivolous.

¶ 31                    B. Best-Interest Determination

¶ 32        Appellate counsel next asserts she can make no meritorious argument that the trial

court's best-interest finding was against the manifest weight of the evidence.

¶ 33        When a trial court finds a parent to be unfit, "the court then determines whether it

is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347,

352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child

relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364.

The State must prove by a preponderance of the evidence that termination of parental rights is in

the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best-interest determination, the

court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS

405/1-3(4.05) (West 2024)). These factors are as follows:

> "(1) the child's physical safety and welfare; (2) the development of the child's
> identity; (3) the child's background and ties, including familial, cultural, and
> religious; (4) the child's sense of attachments, including love, security, familiarity,
> and continuity of affection, and the least-disruptive placement alternative; (5) the
> child's wishes; (6) the child's community ties; (7) the child's need for permanence,
> including the need for stability and continuity of relationships with parental figures
> and siblings; (8) the uniqueness of every family and child; (9) the risks related to
> substitute care; and (10) the preferences of the persons available to care for the
> child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS
> 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these

factors, and a reviewing court need not rely on any basis used by the trial court below in affirming

- 9 -

its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 34 All told, the evidence in the record on appeal shows X.H. is in a good home and his needs are being met. The foster parent provided a safe home, medical services, and care for X.H., and she desired to make the relationship permanent. At the time of the best-interest hearing, X.H. had been in foster care since 2023 and had developed a bond with his foster parent and foster siblings. While respondent had been taking steps to better herself while incarcerated, the trial court ultimately concluded X.H. deserved stability and permanency, which the foster parent provided. Such evidence supports the court's decision that terminating respondent's parental rights served X.H.'s best interest. The court's decision is therefore neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16 (stating a trial court's decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on evidence). Thus, we conclude the court's best-interest finding was not against the manifest weight of the evidence because we cannot say the evidence adduced clearly calls for the opposite conclusion. We agree with counsel, any argument contesting the court's best-interest finding would be meritless.

¶ 35 Because we find there are no meritorious arguments that could be raised in this appeal, respondent's request for new counsel is moot. To the extent respondent's response to counsel's motion to withdraw could be construed as a motion to request an extension of time, that

motion is denied.

¶ 36     As a final matter, in appellate counsel's motion, she indicates, "The undersigned has reviewed the record regarding the trial court's finding that Johnny was unfit and the court's finding that terminating Johnny's parental rights was in J.S.'s best interests and has found no non-frivolous grounds exist for the appeal." We note that Johnny and J.S. are not subjects of this present appeal (and the record is devoid of any mention of such individuals.) However, appellate counsel did correctly reference respondent and X.H. throughout the remainder of her motion to withdraw. Therefore, we conclude this to be a typographical error. However, we caution counsel to avoid making such fundamental errors in the future.

¶ 37                    III. CONCLUSION

¶ 38     For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 39     Affirmed.